[Civ. No. 16853. First Dist., Div. Two. July 16, 1956.]

MAUDIE MAE McGLASSON, Appellant, v.
JAMES BLYTHE et al., Respondents.

*Assigned by Chairman of Judicial Council.

C. Jay Hollander and Henry Muller for Appellant.

Charles B. Snow for Respondents.

NOURSE, P. J.—In reciprocal quiet title actions with respect to certain real property in Newark, Alameda County, hereinfurther called the property, title was quieted in Jim Blythe and Effie Blythe, husband and wife. The other claimant, Maudie Mae McGlasson, sister of Jim Blythe, appeals. Before January 1, 1949, appellant and her husband were

living on the property under a sales agreement from the former owners, who retained title pending installment payments of the purchase price. On January 1st, appellant still owed $125 plus interest on the sales price and $542 on a contract for improvements she made on the property. At that time respondents were living on a property which they owned in Stanislaus County subject to a deed of trust for $3,250. This property is called herein the Stanislaus property. In the first part of January 1949, the parties exchanged residences. The dispute between the parties centers on respondents' contention that the change was based on a definitive oral agreement that they would take over the property, pay the two balances due and receive title directly from the former owners and that appellant in exchange would take the Stanislaus property subject to the deed of trust, as against appellant's contention that there was no definitive agreement, that the parties moved in anticipation of a possible future agreement and that said uncertain status was permitted to continue indefinitely.

Judge Allen J. Norris, who at the time was a practicing attorney and who had earlier drawn up the contract of sale of the property to the McGlassons, testified that in the first part of January 1949, a conference of the parties took place in his office, in which conference appellant took a leading part. No provisional exchange contract was signed then because the parties thought such unnecessary, but after it, Mr. Norris ordered title insurance on the property for respondents, took steps to clear two title defects which appeared, mailed to the McGlassons, who then occupied the Stanislaus property, for their signature an assignment to respondents of their contract of sale of the property, obtained a deed from the former owner to respondents, which deed was sent to the title company who recorded it, collected from respondents the money due on the contract of sale and paid it over and prepared and had recorded a deed of the Stanislaus property from respondents to the McGlassons. Clifford McGlasson, appellant's husband, signed the assignment, but appellant did not do so, and later (in June 1949) she told Attorney Norris that she wanted the property back, and that she had not signed anything. Respondents refused to undo the exchange. They maintained possession of the property until April 11, 1953, either by living in it or by renting it to others and collecting rents. They paid the balance due on the improvement contract as they had paid the balance due on the contract

of sale. On April 11, 1953, when a new lessee of respondents was preparing to move in, appellant took possession. She and her husband had lived some time on the Stanislaus property; they had tried to sell it with the encumbrance but had not succeeded; they had not kept up the payments required by the deed of trust and the Stanislaus property had been sold at a trustee sale in 1951. After appellant had taken possession of the property respondents commenced a forcible entry action on April 27, 1953, in justice's court. Then only did appellant take her first legal measures, this quiet title action with a cause of action to enjoin the forcible entry action until the title suit would be decided. A temporary restraining order issued accordingly. Defendants cross-complained to have title quieted in themselves.

The trial court found in substance that the oral exchange agreement had been concluded, that the deed from the former owners of the property to respondents was executed and delivered with the consent of appellant and pursuant to said agreement and that respondents hold legal title without fraud; that they paid the debts of appellant which they had assumed, conveyed the Stanislaus property to appellant, and made substantial improvements on the property. The court also concluded that there was such performance of the oral agreement as to take the case out of the operation of the statute of frauds, that appellant was estopped from invoking the statute and that the delay to the detriment of respondents in commencing the action constituted laches and prevented relief.

■ Appellant's main contention that the evidence does not support the finding that the parties entered into a definitive exchange agreement is wholly without merit. Testimony of Jim Blythe and Judge Norris supports the definitive character of the agreement. The fact that after six years they could not always exactly remember who said what does not indicate that there was no definite meeting of the minds at the time itself. Moreover, the court could consider the definitive character of the exchange corroborated by the evidence that appellant told Mary Andrade, a neighbor in Stanislaus County, "that they had traded and she was going to come down and sign the Deed" and that appellant's husband offered to sell the Stanislaus property to his neighbor Manuel Andrade, asking $500 for his equity. Appellant's testimony caused a conflict only, the solution of which against appellant is binding on this court.

■ When it is accepted that a definitive oral exchange

agreement had been made, according to which respondents would obtain title to the property directly from the original sellers, then the evidence showed full execution of said agreement, which takes it out of the statute of frauds. Respondents having obtained legal title and possession of the property and having performed as the agreed consideration the conveyance of the Stanislaus property to appellant and the payment of the obligations they had assumed, nothing further remained to be done. By the oral agreement and its stated execution appellant had lost all equitable interest in the property and no transfer of such interest from her to respondents who held the legal title was required. "The statute of frauds does not apply to fully executed contracts relating to lands, such as contracts to convey, exchange or lease land . . ." (37 C.J.S. 741, § 240; see *Pearsall* v. *Henry*, 153 Cal. 314, 326 [95 P. 154, 159]; 23 Cal.Jur.2d 406, § 134.) ▇ Neither is the fact that Attorney Norris, who handled the conveyances in execution of the agreement as agent of the parties, had no authority in writing relevant after the conveyances have been fully executed. (*Dearborn Electric Light & Power Co.* v. *Jones*, 299 F. 432, 437.)

▇ It must be noted that the action of respondents, who were holders of the legal title, had had full possession and had complained of appellant's forcible entry was not an action for specific performance, but for quieting of their title after performance had taken place. Such action is not subject to the strict requirements of an action for specific performance (49 Am.Jur. 7-8, Specific Performance, § 3). Appellant's authorities regarding the requirement of certainty of the agreement and fairness of the agreement and adequacy of consideration are therefore beside the point.

▇ It is true that respondents in their cross-complaint to quiet title did not allege ownership (legal title) and based their action on quiet possession and occupancy for less than the statutory period of five years only. However, appellant did not demur to the cross-complaint and in her answer alleged deeds of the former owners of the property to respondents, and that the legal title was in respondents but that said title was fraudulent. The deeds to respondents were introduced in evidence by stipulation and extensive evidence taken without objection as to the exchange agreement of the parties. Under these circumstances appellant was evidently not misled to her prejudice in the proceedings. (Code Civ. Proc., § 469; Const. art. VI, § 4½; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d

375, 382 [240 P.2d 580]; *Rosenthal* v. *Harris Motor Co.*, 118 Cal.App.2d 403, 408-409 [257 P.2d 1034].) It is then irrelevant whether respondents' cross-complaint was correctly formulated, because "In an action to quiet title, even though defendant does not file a cross-complaint or ask for any affirmative relief, a decree declaring that defendant has title, and enjoining plaintiff from further setting up a claim thereto, is a proper form of judgment." (*Ridgway* v. *Ridgway*, 95 Cal.App.2d 46, 50 [212 P.2d 6].)

Appellant's contention that findings and judgment relating to appellant alone, without her husband being a party to the proceeding, is erroneous because her interest in the property was a community interest is disproved by her own testimony and that of her husband that he transferred all of his interest in the property to her.

Appellant's contentions that there was no substantial evidence that the assignment of the contract of sale under which appellant originally had possession of the property was signed by her husband and that its admission was error because even the signed contract was immaterial because no delivery had been shown, are without merit. It had been stipulated that with respect to the signature of Clifford McGlasson the court would act as its own expert in comparing signatures and so forth and on that basis the court could find that Clifford had signed the assignment. Although the document, which was not signed by appellant and of which it did not appear that it was delivered, was ineffectual to transfer appellant's rights under the contract of sale, the court could consider the fact that Clifford signed the document relevant with respect to the essential issue whether previously a definitive oral agreement of exchange had been entered into. The action of the trial court in receiving evidence as material will not be disturbed on appeal in the absence of an abuse of discretion. (*Estate of Ades,* 81 Cal.App.2d 334, 342 [184 P.2d 1]; *Decter* v. *Stevenson Properties, Inc.,* 39 Cal.2d 407, 420 [247 P.2d 11].) We do not find such abuse here.

The findings and conclusion of the trial court upheld in the above are sufficient to support the judgment without any reliance on an estoppel of appellant to invoke the statute, respondents making of substantial improvements on the property or on laches of appellant in instituting action. It is then unnecessary for us to review the latter points. (*Shultz* v. *Redondo Imp. Co.,* 156 Cal. 439, 440-441 [105 P. 118]; *Sands*

v. *Eagle Oil & Refining Co.*, 83 Cal.App.2d 312, 321 [188 P.2d 782].)

It may well be that the statement in the third finding "that the agreement between Plaintiff and the Defendant further provided that the Plaintiff and Clifford McGlasson would assume and pay a certain debt of the said Defendant which was secured by the property located in Stanislaus County" does not render exactly the evidence on this point, which indicates that the liability of plaintiff and her husband in that respect would be restricted to the Stanislaus property, but this detail can have no influence on the decision of the case and we see no reason to order amendment of the finding as appellant has not shown any danger of harm from the irregularity. (*Alonso* v. *Hills*, 95 Cal.App.2d 778, 785 [214 P.2d 50].)

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.