[No. A125352. First Dist., Div. Three. Sept. 2, 2010.]

RICHARD VANDERKOUS, as Trustee, etc., Plaintiff and Appellant, v. NANETTE UJDUR CONLEY, Defendant and Respondent.

## Counsel

Greenan, Peffer, Sallander & Lally, Kevin D. Lally, Alice M. Peiler and John P. Makin for Plaintiff and Appellant.

Law Offices of John T. Schreiber and John T. Schreiber for Defendant and Respondent.

## Opinion

**SIGGINS, J.**—Richard Vanderkous, as trustee of the Richard Vanderkous Trust, sued Nanette Ujdur Conley seeking to quiet his title to certain real property. In its statement of decision the court found that, while Vanderkous had legal title to the property, Conley retained an equitable interest. Title was thus quieted in Vanderkous, and Conley was directed to execute a quitclaim deed in his favor. But Vanderkous, in return, was directed to pay Conley the full market value of the property as compensation for her equitable interest. Following issuance of the statement of decision, Vanderkous filed a request for dismissal of the entire action with prejudice. When Conley appeared in court for a hearing to value her interest and thus set the measure of Vanderkous's payment, the court set aside the dismissal, valued Conley's interest, and entered judgment in her favor. Vanderkous later successfully moved to set the judgment aside pursuant to Code of Civil Procedure section 473,[1] and after further proceedings the trial court entered the judgment that is now before us.

Vanderkous says the court erred by proceeding after he requested that the case be dismissed with prejudice. Because his dismissal was effective, Vanderkous also says the court erred when it awarded Conley attorney fees on his motion to vacate the initial judgment under section 473. In any event, he argues that Conley was not entitled to recover compensation for her interest in the property because she never filed a cross-complaint seeking affirmative relief, and the valuation of her interest as reflected in the court's final judgment was not supported by substantial evidence.

We conclude that Vanderkous's request to dismiss the action was untimely and of no effect because it was filed after the case was submitted for decision. Though a hearing to value Conley's interest was pending when the dismissal was filed, that hearing did not have the effect of vacating submission of the action. Even in the absence of a cross-complaint, the court had the authority in the exercise of its equitable powers to compensate Conley for her interest

---

[1] All further statutory references are to the Code of Civil Procedure.

in the property, and the measure of her compensation is supported by substantial evidence. The award of attorney fees Conley incurred to oppose Vanderkous's section 473 motion was also proper. We therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Vanderkous and Conley lived together in a home on an eight-acre parcel of land owned by Vanderkous in Martinez. The couple split up in 1999. As part of the settlement of their affairs, Vanderkous sold Conley a portion of the property that included their home. Following a dispute over performance of the settlement, a September 2001 arbitration award directed Conley to cooperate with Vanderkous to effectuate a lot line adjustment that would result in the home, a detached garage, and a setback area on a single lot to be owned by Conley with the remainder of the eight acres as a single parcel to be retained by Vanderkous. Vanderkous was also to have access and utility easements over the garage area for the benefit of his retained parcel.

The easements were executed by Conley and recorded. But the garage and surrounding property were never transferred because neither Vanderkous nor his attorney recorded either the lot line adjustment or the grant deed to Conley for the garage and setback area. Even though Conley granted easements to Vanderkous, she did so without having legal title to the garage and setback area.

Conley's home was destroyed by fire in February 2004, and she was unable to rebuild it because, without the lot line adjustment, she did not have a legally buildable lot. She stopped making her loan payments and lost the home in a foreclosure sale in May 2006.

Meanwhile, Vanderkous received approval to record a subdivision map covering his adjacent property in July 2005. But the title company that was to record the map refused to do so because the grants of easement by Conley created a cloud on Vanderkous's title. The garage and setback area was included in the proposed subdivision, but its ownership was unclear because the grants of easement suggested Conley had a legal interest in the property. When Vanderkous was unable to secure a quitclaim deed from Conley relinquishing any interest she may have had in the garage and setback area, he filed his complaint for declaratory relief and to quiet his title.

The complaint alleged Vanderkous was unable to record his subdivision map or obtain title insurance, "because of a cloud of title arising over the erroneous description of [Conley's] property, which recites the proposed but failed lot line adjustment, in the now recorded Grant of Easement." Conley denied the allegations of the complaint, asserted affirmative defenses, and

prayed for judgment in her favor and "such other and further relief as the Court may deem just and proper."

Following a three-day court trial and the filing of closing briefs from both sides, the matter was deemed submitted on March 10, 2008. On May 30, 2008, the court filed its statement of decision and ordered Conley to execute a quitclaim deed in favor of Vanderkous. The court also reformed the legal descriptions set forth in the easements to delete any implication that Conley had any ownership interest in the property, and quieted Vanderkous's title to the property against any claims by Conley.

But the court also found that Conley had obtained equitable ownership of the garage area, and ordered Vanderkous to compensate her for her quitclaim in an amount equal to the full fair market value of the garage area, to be appraised as a legally conforming lot, reduced by certain expenses Vanderkous had incurred.[2] If the parties could not agree on the amount Vanderkous was to pay Conley, each party was ordered to submit an appraisal for the court's final determination.

Conley submitted an appraisal that valued the garage area at $410,000. In accordance with the court's directions, the appraiser assumed the garage area "is a conforming legal lot with all necessary right of ways and easements for access and utility services, and can be improved as a single family residential property." Vanderkous submitted an appraisal that valued the property at $75,000, but also requested a continuance in order to submit a revised appraisal as of the date Conley lost the property through foreclosure rather than the date of the fire. Vanderkous also requested an evidentiary hearing on the value of the property due to the substantial discrepancy between the two appraisals. The court granted his request.

On August 18, 2008, the day before the evidentiary hearing, Vanderkous filed a request for dismissal with prejudice with the clerk. Even though Vanderkous did not appear for the August 19 evidentiary hearing, it went forward as scheduled. The court observed that Vanderkous knew of the hearing date, and it considered his attempt to dismiss the case as a bad faith maneuver to prevent Conley from proving the measure of her compensation. Following the hearing, the court entered judgment.

The court determined that the appraisal filed by Vanderkous did not comply with the requirements specified in the statement of decision. Therefore,

---

[2] The court's order specified: "The full fair market value of the Garage Area[] shall be determined utilizing customary appraisal principles including highest and best use, comparable sales, subjective and objective analysis and the value of assemblage with respect to [Vanderkous's] subdivision and development goals stated in Complaint [¶] [¶] 8 and 13, as a conforming legal lot with access together with the value of the structure and improvements."

Vanderkous had provided no competent evidence of the garage area's value and his appraisal was disregarded. Sua sponte, the court ruled that Vanderkous's attempt to dismiss the action was void *ab initio* because it was made after trial had commenced and was not authorized under section 581. The court also accepted the valuation submitted by Conley and awarded her $410,000.

Vanderkous moved under section 473 to set aside the judgment, and the court granted the motion based on a mistaken belief by Vanderkous's attorney that his attempt to dismiss the lawsuit was effective. Vanderkous and/or his attorney were ordered to pay Conley's attorney fees and costs associated with (1) the August 19 evidentiary hearing and (2) the hearing on the motion to set aside the judgment.[3] The court also allowed Vanderkous three days to submit an appraisal that complied with the requirements specified in the statement of decision, and set an evidentiary hearing to determine the property's value. Vanderkous then submitted an appraisal that valued the garage area at $71,000.

Following two days of hearings, the court determined the market value of the property was $410,000, in accordance with the testimony of Conley's appraiser, to be reduced by amounts expended by Vanderkous to improve and maintain it.[4] Conley was also given an interest-bearing equitable lien payable on the property's transfer or sale. After a further hearing the court determined that a $118,127 cost of utility hookups and $92,627 for Vanderkous's expenses to improve and maintain the property should be deducted from the $410,000 appraisal value. Vanderkous was ordered to pay Conley $199,246, secured by an equitable lien on Vanderkous's entire real property. The final judgment also ordered Vanderkous to reimburse Conley the attorney fees and costs of $16,763 for proceedings in connection with the section 473 motion. Vanderkous timely appealed.

## DISCUSSION

### A. *Standard of Review*

"Our review of questions of law is de novo. [Citation.] However, to the extent [an] appeal implicitly challenges any factual findings of the trial court,

---

[3] The attorney fees and costs were later determined to be $16,763, based on Conley's attorney's declaration.

[4] The reporter's transcript of the November 7 evidentiary hearing on the appraisals was not included in Vanderkous's designation of the record on appeal. According to the register of actions, the proceedings on that day included the testimony of Vanderkous's appraiser, as well as the direct examination of Conley's appraiser, who was later recalled for cross-examination during the November 13 hearing.

we do not disturb the trial court's findings if substantial evidence supports the judgment. Instead, we resolve all conflicts in favor of the judgment . . . ." (*Poniktera v. Seiler* (2010) 181 Cal.App.4th 121, 130 [104 Cal.Rptr.3d 291].)

### B. *The Trial Court Properly Set Aside Vanderkous's Purported Dismissal of the Action*

Vanderkous contends the trial court lacked jurisdiction to set aside his voluntary dismissal of the complaint filed with the clerk on the day before the evidentiary hearing. He says the submission of the case was effectively vacated because, following issuance of the statement of decision, the court took evidence on the value of the garage area. Thus, Vanderkous argues, he was entitled to voluntarily dismiss the matter with prejudice under section 581, subdivisions (d) and (e).[5] Because the dismissal was effective, Vanderkous contends the court's award of attorney fees in connection with the dismissal must also be reversed. We disagree.

Section 581, subdivision (d) provides that a complaint may be dismissed with prejudice when the plaintiff abandons it *before the final submission of the case*. Here, the court's statement of decision following the three-day court trial, states "[t]he matter was deemed submitted on March 10, 2008, following receipt of closing briefs from both sides." The statement of decision resolved Vanderkous's quiet title cause of action and his claim for declaratory relief, and ordered him to compensate Conley for the fair market value of property she was required to quitclaim to him.

There is nothing in this record that demonstrates any intention on the part of the trial court to vacate submission of the case, even though further hearings were held to value Conley's interest. Whether or not a court has vacated submission of a cause is to be determined upon the terms of the order made by the court. (*Jalof v. Robbins* (1941) 19 Cal.2d 233 [120 P.2d 19],

---

[5] Section 581, subdivision (d) states: "Except as otherwise provided in subdivision (e), the court shall dismiss the complaint . . . with prejudice, when upon the trial and before the final submission of the case, the plaintiff abandons it." Subdivision (e) provides: "After the actual commencement of trial, the court shall dismiss the complaint . . . with prejudice, if the plaintiff requests a dismissal, unless all affected parties to the trial consent to dismissal without prejudice or by order of the court dismissing the same without prejudice on a showing of good cause." Vanderkous maintains these provisions give a plaintiff "the absolute right to file a dismissal *with prejudice*," citing 6 Witkin, California Procedure (5th ed. 2008) Proceedings Without Trial, section 311, page 766. But that section of Witkin includes no such statement, and the following section instead states that "a motion to dismiss under C.C.P. 581(d) is addressed to the *court's discretion*." (*Id.*, § 312, p. 768.) Section 581, subdivision (b)(1), by contrast, authorizes dismissal of an action with or without prejudice before trial begins (see 6 Witkin, Cal. Procedure, *supra*, § 311, p. 767; *id.*, § 312, p. 768), but Vanderkous does not (and could not) rely on that provision here.

citing *Franks v. Cesena* (1923) 192 Cal. 1 [218 P. 437].) Here, the court envisioned the possibility of further proceedings to value Conley's interest in the same order that deemed the case submitted. The authorities Vanderkous relies upon to argue that setting the evidentiary hearing vacated submission of the cause do not help him.

In *Jalof v. Robbins, supra*, 19 Cal.2d 233, the dismissal was filed before trial concluded, and the court specifically noted the cause had not been submitted. In *Westbay v. Gray* (1897) 116 Cal. 660 [48 P. 800], the dismissal was filed after the trial court expressly vacated submission to allow the plaintiff to amend the complaint. In *Strupelle v. Strupelle* (1922) 59 Cal.App. 526 [211 P. 248], the cause was dismissed after proceedings were continued in order to permit the plaintiff to amend the complaint where there was no indication in the record that the cause had been submitted. None of these cases present a situation where submission of a cause was vacated by implication merely because the trial court ordered postsubmission evidentiary proceedings.

█ Because Vanderkous has not convinced us that he had an absolute right to dismiss his complaint, we also reject his argument that the trial court lacked jurisdiction to set aside his attempted dismissal. (See *Riley v. Superior Court* (1952) 111 Cal.App.2d 365, 366–367 [244 P.2d 474] [trial court properly vacated clerk's dismissal that did not comply with § 581]; cf. *S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 378, 380 [46 Cal.Rptr.3d 380, 138 P.3d 713] [a *proper* dismissal under § 581 is effective immediately]; *Harris v. Billings* (1993) 16 Cal.App.4th 1396, 1405 [20 Cal.Rptr.2d 718] [trial court lacked jurisdiction to vacate dismissal properly entered pursuant to plaintiff's request].) A contrary rule would enable Vanderkous to avoid compliance with the court's decision and would undermine the trial court's authority to provide for the orderly conduct of proceedings before it and compel obedience to its judgments, orders, and process. (See § 128, subd. (a).)

█ We also reject Vanderkous's argument that the trial court's award of attorney fees and costs to Conley for her defense of the section 473 motion should be reversed. A court may relieve a party from a judgment taken through mistake, "upon any terms as may be just." (§ 473, subd. (b).) Such terms frequently condition relief obtained under section 473 on the payment of an adversary's fees and costs. (See, e.g., *Rogalski v. Nabers Cadillac* (1992) 11 Cal.App.4th 816, 822–823 [14 Cal.Rptr.2d 286] [remanding to set aside defaults under § 473 on condition that defendants pay plaintiff's attorney fees

and costs incurred in obtaining them].)[6] Here, when the court granted Vanderkous relief from the judgment, it required he pay Conley's fees. The order was permissible under section 473.

C. *The Court Properly Ordered Vanderkous to Compensate Conley for Her Equitable Interest in the Property When It Quieted His Title to the Garage Area*

Vanderkous argues that the trial court was without power to direct that he compensate Conley for the interest in the property she was required to relinquish by quitclaim because Conley never filed a cross-complaint seeking affirmative relief. But his argument ignores the extent of the court's equity jurisdiction in a quiet title action where "the court has jurisdiction to hear and determine all issues necessary to do complete justice." (*South Shore Land Co. v. Petersen* (1964) 226 Cal.App.2d 725, 741 [38 Cal.Rptr. 392]; see *Westerholm v. 20th Century Ins. Co.* (1976) 58 Cal.App.3d 628, 632, fn. 1 [130 Cal.Rptr. 164] ["a court of equity will administer complete relief when it assumes jurisdiction of a controversy"]; § 760.040, subd. (c) ["Nothing in this chapter [governing actions to quiet title] limits any authority the court may have to grant such equitable relief as may be proper under the circumstances of the case."].)[7]

In *Peckwith v. Lavezzola* (1942) 50 Cal.App.2d 211 [122 P.2d 678], the Court of Appeal affirmed a judgment awarding a defendant compensation in a quiet title action. True, the defendant had filed a cross-complaint, but it was a cross-complaint seeking to quiet title to the same property claimed by the plaintiff. The cross-complaint did not seek damages, but did contain a prayer for such other and further relief as was proper. (*Id.* at p. 213.) Although the defendant Lavezzola was not entitled to quiet title in his favor, he was entitled to and awarded compensation. "Such damages may be awarded in an equitable action to quiet title under the general prayer for 'such other and further relief . . . as may seem meet in the premises.' Having

---

[6] Because we conclude Vanderkous was no longer entitled to dismiss the case under section 581, subdivision (d) after the case was submitted, we do not address additional grounds asserted by Conley to argue that the request for dismissal was improper.

[7] Vanderkous seeks to distinguish *South Shore Land Co.* and *Westerholm* because the defendant in each of those cases filed a cross-complaint. But the defendants' status as cross-complainants was not material to the general principle that a court in an equitable action has jurisdiction to hear and determine all issues necessary to do justice in the case. (See *South Shore Land Co. v. Petersen, supra*, 226 Cal.App.2d at p. 741 [no general demurrer to cross-complaint when demands for additional forms of relief were joined with cause of action to quiet title]; *Westerholm v. 20th Century Ins. Co., supra*, 58 Cal.App.3d at p. 632, fn. 1 ["in such an action it is proper for the court to grant any relief consistent with the evidence and the issues embraced by the pleadings"]; see also *Wilson v. Madison* (1880) 55 Cal. 5, 8 [defendant in quiet title action need not file cross-complaint to quiet title against plaintiff, since "[i]ssue was joined on title by the complaint of plaintiff, and defendant's answer thereto"].)

acquired jurisdiction in this equitable action complete justice should be afforded by compensating the defendant for the value of his property which is taken." (*Id.* at p. 220.)

Here, Conley sought "such other and further relief as the Court may deem just and proper." She did so in her answer, not by cross-complaint. But in a quiet title action that is a distinction without a difference. Conley's answer sufficiently put this cause at issue to allow title to be quieted in her favor and against Vanderkous. (See *Ridgway v. Ridgway* (1949) 95 Cal.App.2d 46, 50 [212 P.2d 6]; accord, *McGlasson v. Blythe* (1956) 143 Cal.App.2d 152, 157 [299 P.2d 325]; *Wilson v. Madison, supra,* 55 Cal. at p. 8.) Her defense also served to vest the court with the equitable power to do justice between the parties. The direction that Vanderkous compensate Conley for her quitclaim deed is obviously intended to do just that. (See 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 670, p. 97 ["A court will not give equitable relief to a plaintiff unless the plaintiff acknowledges or provides for the equitable claims of the adverse party growing out of the controversy or connected with the same subject matter. [Citation.] Accordingly, a plaintiff seeking to quiet title might have to plead an offer to pay taxes or a mortgage debt."].)

■ A more customary form of judgment would have quieted title in Vanderkous on the condition that he pay Conley the amount due her as compensation. (See, e.g., *Stein v. Simpson* (1951) 37 Cal.2d 79, 87 [230 P.2d 816].) Nevertheless, the judgment obliged Vanderkous to pay Conley in exchange for her quitclaim of her interest in the garage area. In fashioning this result, the court did no more than apply a fundamental maxim of equity jurisprudence and require Vanderkous to "do equity" in order to get equity. (See 1 Pomeroy, Equity Jurisprudence (5th ed. 1941) § 385, pp. 51–54.)

### D. *Substantial Evidence Supports the Property's Valuation as a Conforming Legal Lot*

Once the trial court determined that Conley was entitled to be compensated for her equitable interest in the garage area, it was faced with the trickier issue of how to measure her compensation. The garage area had historically been considered by the parties as ancillary to their home. After the home was destroyed by fire, Conley could not rebuild it and she stopped paying her mortgage. The lender foreclosed and Conley lost the home in a foreclosure sale. The court was thus faced with the question of how to set a market value for Conley's interest in the garage area when it could no longer serve its historical function. In the statement of decision, the court announced its intention that appraisers value the garage area using customary appraisal principles "as a conforming legal lot with access together with the value of the structure and improvements."

Vanderkous argues the decision to appraise the garage area as a conforming legal lot is unsupported by the evidence because it was not in fact a separate legally conforming lot. It was instead a portion of Vanderkous's larger eight-acre parcel that he was seeking to subdivide.

When we review a judgment that is said to be unsupported by substantial evidence, we review the record in the light most favorable to the judgment and will draw all permissible inferences and presumptions in favor of its validity. (*People ex rel. Monterey Mushrooms, Inc. v. Thompson* (2006) 136 Cal.App.4th 24, 36, fn. 11 [38 Cal.Rptr.3d 677].) When the court filed its statement of decision, the evidence demonstrated that the garage area was part of one of the lots of the subdivision approved for the Vanderkous property.[8] When he first initiated the approval process, it was Vanderkous's intention to live in the apartment above the garage and give the other two lots to his daughters. These facts could arguably permit the trial court to draw an inference that the garage area could be considered a legal conforming lot for valuation purposes. But there is more evidence that supports the trial court's valuation.

When the court conducted the hearings to establish the value of the garage area, it heard testimony from Conley's appraiser that the garage area parcel conformed to the size requirement for a single family lot under the existing zoning scheme. He also testified that it could be a legal single family lot if it were approved by the city, and that while his valuation was based on the court's directive, there was a reasonable basis to assume the garage area could be a separate single family lot because it fit the pattern of development in the surrounding area.

Conley's appraiser also acknowledged that his valuation took into account the presence of functional utility hookups for the garage area property. If there were costs incurred to provide utility service, they would be a charge against the property's value. Although there is some evidence suggesting the property is landlocked and burdened by a scenic view easement, there is nothing to suggest the existing structure could not be used as a dwelling. Thus, the court's decision to value the garage area as a single family lot is supported by substantial evidence. Our task is to determine whether there is any substantial evidence, contradicted or not, that supports the trial court's conclusion, " ' "even if [we] would have ruled differently had [we] presided over the proceedings below, and even if other substantial evidence would have supported a different result." ' " (*People ex rel. Monterey Mushrooms, Inc. v. Thompson, supra,* 136 Cal.App.4th at p. 36, fn. 11.)

---

[8] Vanderkous testified the garage area constituted approximately 80 to 90 percent of the third parcel in his subdivision, and the balance was currently unbuildable.

The court properly ordered deductions from the $410,000 appraisal value for the cost of utility hookups ($118,127) and for amounts expended by Vanderkous to improve and maintain the property ($92,627), resulting in a balance owed by Vanderkous to Conley of $199,246.[9]

## DISPOSITION

The judgment is affirmed.

Pollak, Acting P. J., and Jenkins, J., concurred.

---

[9] Vanderkous's brief in the trial court stated that he incurred costs of approximately $218,000. He also estimated the costs of utility hookups at $110,327, and asked the court to subtract all those costs from Conley's $410,000 appraisal, resulting in a net award to Conley of approximately $82,000. But he makes no argument on appeal that the amounts set off by the trial court are incorrect.