Filed 9/22/22  Simmons-Redd v. Scandrick CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| PATRICIA SIMMONS-REDD,<br><br>    Cross-complainant<br>    and Appellant,<br><br>    v.<br><br>ORLANDO SCANDRICK,<br><br>    Cross-defendant and<br>    Respondent. | B311347<br><br>(Los Angeles County<br>Super. Ct. No. YC071173) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ramona G. See, Judge.  Affirmed.

Patricia Simmons-Redd, in pro. per., for Cross-complainant and Appellant.

PTAH Law Group and Cherisse Gay Lanier for Cross-defendant and Respondent.

—————————————

This appeal concerns a dispute over the ownership of a residential property in Inglewood, California (the property). In 2004, Patricia Simmons-Redd contracted with her stepfather, Henry Scandrick, to purchase the property. In 2013, Henry's son, Orlando Scandrick, became involved in his father's affairs.[1] The parties were soon mired in litigation over their respective ownership interests in the property and disputed terms in Henry and Simmons-Redd's purchase agreement. In 2016, Henry executed a deed gifting his interest in the property to Orlando.

Following a bench trial on Henry's complaint to quiet title against Simmons-Redd, and Simmons-Redd's cross-complaint against Henry and Orlando, the trial court found neither party was entitled to the relief sought in their respective complaints. The trial court issued a judgment declaring Orlando and Simmons-Redd each hold a 50 percent interest in the property. Simmons-Redd has appealed, contending the trial court should have awarded her a 100 percent ownership interest in the property, and challenging several aspects of the trial court's ruling. We affirm the trial court judgment.

**FACTS AND PROCEDURAL BACKGROUND**

The following facts are derived from evidence adduced at the January 2020 bench trial. Henry and Simmons-Redd's mother, Cleo, married in 1993 and resided at the property, a home they would later jointly own. In or around 2004, they relocated to Alabama to be near Henry's ailing brother. To fund the purchase of an Alabama property, Henry and Cleo took out a mortgage on their Inglewood home. They offered to sell

---

[1] We refer to the Scandricks by their first names for the sake of clarity; we intend no disrespect.

Simmons-Redd the property at the then-current market value of $260,000. Simmons-Redd agreed to pay Henry and Cleo a $40,000 deposit and later repay the outstanding mortgage balance of $220,000.

In January 2004, Simmons-Redd and Henry executed a purchase agreement reflecting a $260,000 purchase price, with a $40,000 down payment, resulting in a "remaining balance" of $220,000. The agreement required that Henry add Simmons-Redd's name to the deed upon receiving the down payment. The agreement further specified: "On February 1, 2004, [Simmons-Redd] would resume [*sic*] the loan of [Henry] at the property listed above. [Simmons-Redd] would make monthly payments of $1,028.89 each month. By the end of 12 months of monthly payments of $1,028.89, [Simmons-Redd] would assume the existing loan of [Henry] and pay the remainder balance to [Henry]. After [Henry] receive[s] the remaining balance from [Simmons-Redd], [Henry] would then remove[] his name from the deed of the property listed above and make [Simmons-Redd] the sole owner of the property." Simmons-Redd was also "responsible for the payment of all property taxes" and would claim the "property as a tax deduction on her income taxes."

After Simmons-Redd tendered the down payment, Henry executed a deed granting the property to himself and Simmons-Redd as joint tenants. To effectuate the transaction, Cleo quitclaimed her interest in the property, leaving Henry as sole owner until Simmons-Redd was added to the title hours later. The notary gave the paperwork related to the transaction to Henry.

After Henry and Cleo moved to Alabama, Simmons-Redd continuously lived at the property. She paid the mortgage,

3

property taxes, and for improvements. However, Simmons-Redd never paid Henry an additional $220,000. She believed the purchase agreement's requirement that she pay Henry the "remainder balance" before she could become the sole owner was a drafting error, as the parties only contemplated her paying Henry's mortgage. Correcting the errors was unnecessary, according to Simmons-Redd, because Henry was her stepfather.

Simmons-Redd later applied to assume the mortgage but did not have the requisite credit score. She did not reapply despite improvements to her credit. In August 2005, Simmons-Redd made a $5,000 "good faith" payment to Henry because she had not yet assumed the loan on the house.

When Henry and Cleo returned to visit California, they sometimes stayed at the property. Henry never asked Simmons-Redd for further payment or raised issues with the purchase agreement. In 2010, Henry and Cleo were in a traffic accident in Alabama, causing Cleo's death. Henry ultimately developed symptoms of Alzheimer's disease and dementia.

In or around 2013, Orlando learned about the mortgage and the agreement with Simmons-Redd. In June 2013, Orlando sent a letter to Simmons-Redd requesting that she pay rent in the amount of the mortgage payment.

In 2014, Simmons-Redd filed a complaint regarding the property. In February 2016, Simmons-Redd recorded the original 2004 grant deed after discovering that she had it in her possession. She then dismissed her complaint.[2]

---

[2] The 2014 complaint is not in the record on appeal and the substance of the complaint is not otherwise clear from the record. Henry was deposed in Simmons-Redd's 2014 action. A transcript

4

In March 2016, Henry executed a deed granting his interest in the property to Orlando as a "bonafide gift." The next day, Henry filed a complaint against Simmons-Redd seeking to quiet title of the property and cancellation of the 2004 grant deed. The complaint alleged that Henry was the sole owner of the property, and, because he was "functionally illiterate," he did not understand any agreement to transfer the property.

In January 2018, Simmons-Redd filed an answer asserting an ownership interest in the property arising from the grant deed from Henry to her. Simmons-Redd alleged "full performance" of the purchase agreement was excused when she attempted to make a "second and final" payment of $40,000 to Henry and he refused it. In May 2018, Simmons-Redd filed a cross-complaint against Henry and Orlando alleging three causes of action: (1) quiet title of the property against all adverse claims, including those of Henry and Orlando; (2) breach of contract requiring specific performance in the form of granting her full title to the property; and (3) unjust enrichment based on her payment of the mortgage and property taxes, as well as funds she had expended for maintenance of the property. Her prayer for relief sought a judicial declaration that she was sole owner of the property and that none of the cross-defendants had a claim to title in the property adverse to hers.

---

of his deposition was admitted as an exhibit in the instant case and considered by the trial court. According to Simmons-Redd, Henry testified at his deposition that he did not recall Simmons-Redd promising him $220,000, and he told Orlando to "leave the issue alone." Although the parties have not transmitted the trial exhibit to this court, Orlando has not disputed Simmons-Redd's description of the deposition transcript.

In May 2018, Henry named Orlando as a Doe Defendant in his complaint. In June 2018, Henry and Orlando jointly answered Simmons-Redd's cross-complaint, denying the allegations, asserting several affirmative defenses, and requesting, among other things, that Simmons-Redd take nothing, that the trial court enter judgment in their favor on the cross-complaint, and that it enter "such other and further relief as the Court deems just and proper."

Orlando filed a separate answer to Henry's complaint admitting several of its allegations, including that Henry was the sole owner of the subject property, and requesting that Henry be awarded the judgment he requested. In opposing Simmons-Redd's motion for summary judgment, Orlando stated in a declaration that he and Henry were advised they "had to break the joint tenancy created by the [2004] Deed by transferring title, or else the survivorship aspect of that joint tenancy would continue." Orlando further declared: "We transferred title to the property to myself to hold it in trust for my father and break the joint tenancy. . . . I am holding title to the property in trust for my father, and I do not claim or have any ownership interest in the property. My father is the beneficial owner of the entire property since [Simmons-Redd] has no valid claim to any ownership interest in the property." Orlando testified similarly at trial.

The parties tried their claims in a bench trial and submitted written briefs in lieu of closing argument. Simmons-Redd argued that Henry's conveyance of his interest in the property to Orlando deprived him of standing to pursue his complaint. Specifically, Simmons-Redd asserted: "[P]rior to filing his complaint, Henry granted his interest in the Property to his

son, Orlando. On 3-7-2016, the day before this action was filed, Henry executed a notarized Grant Deed . . . which transferred Henry's purported interest in the Property to Orlando. . . . Therefore, when Henry filed this action on 3-8-2016, he no longer had an interest in the Property and therefore had no standing to sue for title to the Property. If Henry had any interest in the Property on March 7, 2019 [*sic*], then that interest was transferred to Orlando by Grant Deed." Simmons-Redd appeared to challenge Orlando's statements that he did not claim an interest in the property, pointing out that although Orlando testified he was only holding the interest for Henry, he "contradict[ed] himself by testifying that . . . Henry transferred Henry's portion of the title to him in 2016."

However, Simmons-Redd elsewhere contended in her closing briefs that the conveyance to Orlando was invalid because Henry lacked capacity and the transfer was a "fraudulent conveyance," intended to deprive Simmons-Redd of her entitlement to the property. Simmons-Redd further argued she had established her claim to sole ownership of the property because she had fulfilled her obligations under the purchase agreement by making mortgage payments and paying the entire purchase price.[3] Henry and Orlando sought cancellation of the purchase agreement, arguing Simmons-Redd had failed to perform her obligations. Henry and Orlando's trial brief further stated that Orlando was asserting a 50 percent ownership interest in the property.

---

[3] Simmons-Redd also appeared to argue that since she had paid the entire purchase price of the property, Henry's transfer to Orlando was void, or it created a constructive trust in her favor.

7

No party requested a statement of decision. However, in a February 2020 minute order, the trial court outlined its factual findings and legal conclusions. The court recited several facts it deemed undisputed, then concluded Henry lacked standing to pursue his complaint because he transferred his interest to Orlando by recorded grant deed, and the statute of limitations otherwise barred his complaint. As to the cross-complaint, the trial court concluded Simmons-Redd was not entitled to relief because she breached the purchase agreement's requirement that she pay Henry $220,000, she failed to show that her obligation was excused, and she did not establish that Henry's transfer of his interest to Orlando was fraudulent, in bad faith, or otherwise voidable. The court found the property remained in Simmons-Redd's and Orlando's names as 50 percent owners. Finally, the parties were to bear their own fees and costs, having lost on their respective claims. In July 2020, the trial court issued a judgment declaring title to the property "is held in the name of [Simmons-Redd] as to a 50% fee ownership interest and [Orlando] as to a 50% fee ownership interest," and providing the legal description of the property.

Simmons-Redd timely appealed.

## DISCUSSION

On appeal, Simmons-Redd alleges the trial court's declaration that Orlando holds a 50 percent interest in the property was improper because Orlando did not file a cross-complaint asserting an ownership interest. Simmons-Redd also asserts several arguments based on legal theories she did not raise in the trial court. She further contends there were several omissions in the trial court's written ruling, and that the trial

8

court erred in declining to award her costs.  We find no basis for reversal.[4]

## I. Standard of review

On appeal from a judgment following a bench trial, we review the trial court's conclusions of law de novo and its findings of fact for substantial evidence.  (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.)  Under this standard, we liberally construe findings of fact "to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings."  (*Ibid*.)  "We may not reweigh the evidence and are bound by the trial court's credibility determinations."  (*Estate of Young* (2008) 160 Cal.App.4th 62, 76.)  " 'The ultimate determination is whether a reasonable trier of fact could have found for the respondent based on the whole record.' "  (*Ibid.,* italics omitted.)

Several rules of appellate review and procedure also guide our analysis.  The appellate court is not a "second trier of fact." (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1531.) The "trial court is the proper place for making factual decisions," and the appellate court's "role is limited to reviewing [the trial

---

[4] Simmons-Redd requests that we take judicial notice of Henry's death certificate, arguing that, to the extent he is found to have a continued interest in the property, at his death his interest passed to Simmons-Redd by operation of law because they were life tenants.  Because we are affirming the trial court's decision in all respects, the death certificate is not relevant to the disposition of this appeal.  We therefore deny the request. (*People v. Stoll* (1989) 49 Cal.3d 1136, 1144, fn. 5.)

9

court's] decision for error, abuse of discretion, or substantial evidence." (*Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 667.) A judgment or order of the lower court is presumed correct and it is the appellant's burden to show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) A reviewing court ordinarily will not consider new legal theories that are raised for the first time on appeal (*Findleton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569), and may find an appellant has forfeited arguments raised for the first time in a reply brief. (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987.) These principles apply to all litigants, including those who are self-represented. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

## II. Orlando's failure to cross-complain did not preclude the trial court's declaration of 50 percent ownership.

Simmons-Redd argues that Orlando's failure to file a cross-complaint seeking affirmative relief prevented the trial court from awarding him any interest in the property under Code of Civil Procedure sections 431.30, subdivision (c), 761.020, and 761.040.[5] We disagree.

To support her claim, Simmons-Redd cites section 431.30, subdivision (c), a general provision governing civil actions, which provides that "[a]ffirmative relief may not be claimed in the

---

[5] All subsequent undesignated statutory provisions are to the Code of Civil Procedure.

10

answer."**6**  However, Simmons-Redd cites no case applying this provision to a quiet title action.  Further, her argument is inconsistent with the provisions falling under the Quiet Title Act (§ 760.010 et seq.).  Section 761.030, subdivision (a)(1) specifically requires that the defendant "set forth" in the answer "*[a]ny claim* the defendant has" (*ibid.*, italics added).  Another provision defines "claim" as "a legal or equitable right, title, estate, lien, or interest in property or cloud upon title."  (§ 760.010, subd. (a).)  These sections supplant general provisions like section 431.30, subdivision (c).  (§ 760.060 ["statutes . . . governing practice in civil actions generally apply to actions under this chapter *except where inconsistent with provisions of this chapter*," italics added].)

The quiet title specific provisions that Simmons-Redd cites do not support her argument.  Section 761.020 merely outlines the required contents of a complaint in a quiet title action.  Section 761.040, subdivision (a) provides, in relevant part, that any defendant in a quiet title action "may" seek affirmative relief through a cross-complaint, but does not preclude affirmative relief sought by way of answer or other pleading.

The provisions cited above reflect a permissive scheme for asserting a quiet title claim, allowing a competing claim to an ownership interest in the property to be asserted by cross-complaint or an answer.  Other provisions of the Quiet Title Act similarly reflect that courts have broad equitable authority to fashion necessary relief in any given quiet title action.  (See, e.g.,

**6** Although Simmons-Redd's briefing on appeal invokes section 430.30, subdivision (c), that provision has no apparent relationship to the argument she is making.  The reference appears to be a typographical error.  We presume Simmons-Redd intended to cite to section 431.30, subdivision (c).

11

§ 760.040, subd. (c) ["Nothing in this chapter limits any authority the court may have to grant such equitable relief as may be proper under the circumstances of the case."]; see *Estates of Collins & Flowers* (2012) 205 Cal.App.4th 1238, 1246 ["A trial court sitting in equity has broad discretion to fashion relief."]; *Aguayo v. Amaro* (2013) 213 Cal.App.4th 1102, 1109 [quiet title action is equitable in nature].)  A court tasked with resolving a quiet title action "has complete jurisdiction over the parties to the action and the property described in the complaint and is deemed to have obtained possession and control of the property for the purposes of the action with complete jurisdiction to render the judgment provided for in this chapter."  (§ 760.040, subd. (b).)  Thus, Simmons-Redd's assertion that a cross-complaint was required for the trial court to declare Orlando has an ownership interest finds no statutory support.

Courts of this state have likewise concluded that the lack of a cross-complaint does not preclude quiet title relief in a defendant's favor.  (See, e.g., *Hudson v. West* (1957) 47 Cal.2d 823, 827 [failure to cross-complain did not preclude quieting title in defendant's favor].)  Courts have also held that quieting title in favor of a defendant is permissible even if the defendant has not sought affirmative relief in an answer.  (*McGlasson v. Blythe* (1956) 143 Cal.App.2d 152, 157; *Ridgway v. Ridgway* (1949) 95 Cal.App.2d 46, 50.)  An answer's generalized prayer for any relief that a court deems just and proper has been found sufficient for quieting title in favor of a defendant.  (*Vanderkous v. Conley* (2010) 188 Cal.App.4th 111, 120.)  This permissive approach ensures that the ownership interests that are settled are not solely plaintiff's, but those of any adverse parties, in order to

12

provide complete and final relief.  (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 703.)

Consistent with these authorities, we find no error in the trial court's judgment.  Orlando's answer to Simmons-Redd's quiet title cross-complaint denied Simmons-Redd's allegations, prayed for judgment in his and his father's favor on the cross-complaint, and requested that the trial court enter "such other and further relief as the Court deems just and proper."  The trial court therefore properly exercised its broad remedial authority, in equity, to declare Orlando holds a partial interest in the property. (§ 760.040, subds. (b) & (c); *Vanderkous v. Conley*, *supra*, 188 Cal.App.4th at p. 120; see *Robin v. Crowell* (2020) 55 Cal.App.5th 727, 740 [description of the parties' legal interests in real property is all that can be expected of judgment in quiet title action].)

## III.   We decline to consider legal theories not raised below or which contradict the legal positions Simmons-Redd advocated in the trial court

On appeal, Simmons-Redd raises several new legal theories to support her underlying claim of sole ownership of the property. She asserts the trial court erred in concluding she did not perform her obligations under the contract because the language upon which the court relied was the product of mutual mistake or a scrivener's error.  She also now argues the purchase agreement was modified by the parties' performance.

Simmons-Redd did not raise the above arguments in the trial court and they are therefore forfeited.  (*Findleton v. Coyote Valley Band of Pomo Indians*, *supra*, 27 Cal.App.5th at p. 569.) As reflected in her closing briefs, Simmons-Redd argued she had performed all obligations under the purchase agreement, or the

13

agreement was "ambiguously drafted," or her performance was excused. Arguments regarding mutual mistake and modification by performance depend on factual findings that were never made because the issues were not presented for determination in the trial court.[7] (*Thrifty Payless, Inc. v. The Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1243 [mutual mistake must be pleaded with particularity].) We further note that a mutual mistake theory would have been at odds with the cross-complaint's allegation that Simmons-Redd attempted to render payments in excess of her purportedly singular obligation to pay the mortgage and maintenance. We follow the general rule that new legal theories may not be raised for the first time on appeal. Even "where a question of law only is presented on the facts appearing in the record . . . ' "if the new theory contemplates a factual situation the consequences of which are open to controversy and *were not put in issue or presented at the trial* the opposing party should not be required to defend against it on appeal." ' " (*Curcio v. Svanevik* (1984) 155 Cal.App.3d 955, 960, italics in original.)

Simmons-Redd also argues that Orlando waived any claim to an ownership interest in the property when he disclaimed that he was asserting an interest in sworn statements before the trial court. She additionally contends that Henry's transfer of his

---

[7] Simmons-Redd also contends that Henry's gift of his interest to Orlando was ineffective because no evidence of delivery or acceptance of the deed was presented at trial. This contention was raised for the first time in her appellate reply brief, and is also forfeited. (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.*, *supra*, 36 Cal.App.5th at p. 987.)

14

interest to Orlando was ineffective because Simmons-Redd's purchase agreement impliedly prohibited Henry from transferring his interest to others.[8]

These arguments fundamentally contradict the legal position Simmons-Redd successfully relied on in the trial court to defeat Henry's complaint. Again we note " '[t]he rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant.' " (*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12; accord, *Vasquez v. SOLO 1 Kustoms, Inc.* (2018) 27 Cal.App.5th 84, 96.)

This rule applies here. Simmons-Redd argued to the trial court that Henry lacked standing to pursue his complaint. Her argument was premised entirely on the validity and effectiveness of the transfer of the property interest from Henry to Orlando, thus depriving Henry of standing to prosecute any claims regarding the property. The trial court adopted that argument in its ruling. The court further explicitly rejected Simmons-Redd's arguments that the transfer was invalid due to fraud or should be deemed void on other grounds. Simmons-Redd does not challenge those aspects of the trial court's ruling on appeal. Further, while Orlando made statements during the litigation appearing to both claim and disclaim an interest in the property, the trial court impliedly resolved those conflicts in favor of the

---

[8] Simmons-Redd did not raise this argument in the trial court, and we would also find it forfeited for that reason.

15

determination that the grant deed validly transferred Henry's interest in the property to Orlando. (*Estate of O'Connor* (2017) 16 Cal.App.5th 159, 163 [province of trial court to weigh conflicts and disputes in the evidence; appellate court does not evaluate the credibility of the witnesses].)

On appeal, Simmons-Redd continues to argue that Henry lacked standing and urges us to affirm the portion of the trial court's ruling adopting that argument, while also asserting the trial court erred in not making findings establishing the contrary position that Henry's transfer to Orlando was *not* effective. Simmons-Redd has provided no legal authority for her contention that once the trial court accepted her argument that Henry's transfer to Orlando was effective and eliminated Henry's standing in the action, there was a legal basis for the trial court to *also* make contradictory factual and legal findings that the transfer was void, or of no legal import by virtue of Orlando's litigation conduct. Simmons-Redd has established no legal error in the trial court's ruling which accepted her standing argument based on explicit and implicit factual findings, then rejected the arguments inconsistent with those findings. (See e.g., *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403 [party inducing commission of error estopped from asserting it as a ground for reversal].)

## IV. Simmons-Redd's various challenges to the form of the trial court's ruling lack merit

Additionally, Simmons-Redd challenges the factual findings in the trial court's written ruling. Specifically, she contends the court deemed several matters undisputed when they were, in fact, disputed. She also asserts that the court's written ruling provided insufficient analysis supporting its conclusion

16

that Simmons-Redd did not meet her burden of proof, or otherwise did not account for important facts.  Finally, she suggests that the court's decision failed to address central credibility issues, including that Orlando's testimony was evasive and the product of leading questions.  These arguments lack merit.

In the absence of a statement of decision, an appellate court "presume[s] that the trial court made all factual findings necessary to support the judgment for which substantial evidence exists in the record.  In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267.)  A party claiming omissions or ambiguously resolved issues will be deemed to have waived those alleged errors.  (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 59–60.)

Here, no party requested a statement of decision, and the trial court accordingly issued only a minute order setting forth its findings of facts and conclusions of law.  "[W]here the option of requesting a statement of decision . . . is available, the trial court's less formal comments on the record or in the minutes are insufficient to form the basis of reversible error." (*Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th at p. 268.)  Because the statement of decision serves the important purpose of allowing the trial court to place on the record its view of facts and law, Simmons-Redd's failure to request a statement of decision results in a waiver of such findings and any errors or omissions in the more informal findings and conclusions that resulted. (*Fladeboe v. American Izuzu Motors Inc.*, *supra*, 150 Cal.App.4th

17

at pp. 59–60; see *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 647 [outlining several policy rationales for this rule].) Absent a request for a statement of decision, the judgment controls and we presume on appeal that "the trial court found all facts necessary to support the judgment." (*Ditto*, *supra*, at p. 649.) Simmons-Redd has not demonstrated, nor do we conclude, that such findings, express or implied, are not supported by substantial evidence. We therefore defer to the trial court's findings and reject Simmons-Redd's contentions regarding the form of the court's minute order.[9]

## V. The trial court did not abuse its discretion in declining to award costs to the parties

Finally, Simmons-Redd contends the trial court erred in declining to award her costs because she was a "prevailing party" under section 1032, subdivision (a)(4), and therefore entitled to costs as a matter of right. We disagree that Simmons-Redd was a "prevailing party" as a matter of right, and find no abuse of discretion in the court's order.

---

[9] We additionally note Simmons-Redd's contention that the trial court deemed matters undisputed, when they were in fact disputed, conflates the nature of an undisputed fact with legal conclusions related thereto. For example, Simmons-Redd claims the trial court's statement that she did not meet her payment requirements under the purchase agreement was, contrary to the trial court's statement of decision, disputed. However, the trial court was articulating that, assuming the purchase agreement legally obligated Simmons-Redd to make a $220,000 payment beyond the mortgage, Simmons-Redd did not make those payments. The trial court plainly understood that the *fact* of Simmons-Redd's nonpayment was undisputed, while her *legal obligation* to render such payment was not.

18

"Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) For purposes of costs, section 1032, subdivision (a)(4) defines a "prevailing party" to include "[(1)] the party with a net monetary recovery, [(2)] a defendant in whose favor a dismissal is entered, [(3)] a defendant where neither plaintiff nor defendant obtains any relief, and [(4)] a defendant as against those plaintiffs who do not recover any relief against that defendant." However, the provision also specifies that "[i]f any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not." (*Ibid.*)

Here, Simmons-Redd is correct that the dismissal of Henry's complaint against her, as defendant, would ordinarily make her a "prevailing party" under section 1032, subdivision (a)(4), entitling her to the costs she incurred defending that case as a matter of right. (§ 1032, subd. (b); see *Michell v. Olick* (1996) 49 Cal.App.4th 1194, 1197.) However, Simmons-Redd neglects the applicability of the remaining sentence of section 1032, subdivision (a)(4), which affords courts discretion to award costs in circumstances where a party recovers nonmonetary relief and under other circumstances. Here, Orlando recovered nonmonetary relief on Simmons-Redd's cross-complaint, rendering the matter of costs "properly determined by the court in its discretion." (E.g., *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1142 [declaratory relief rendered on cross-complaint afforded the trial court discretion as to cost award, notwithstanding plaintiff's otherwise satisfying definition

19

of "prevailing party"].)  Thus, Simmons-Redd was not entitled to costs as a matter of right.

Simmons-Redd does not expressly contend that the trial court abused its discretion in declining to award either side costs. Nonetheless, we do not identify such an abuse, where the court awarded no relief on the complaint, denied Simmons-Redd relief on her cross-complaint, but issued a judgment declaring Simmons-Redd and Orlando each hold a 50 percent interest in the property.  (See *Lincoln v. Schurgin* (1995) 39 Cal.App.4th 100, 105–106 [parties bearing own costs within the bounds of reason where parties were not afforded complete relief, and appellant did not articulate why decision was abuse of discretion].)

## VI.    Appellate sanctions

Orlando requests that we award him sanctions against Simmons-Redd for filing a frivolous appeal, but he has failed to file a separate sanctions motion.  (Cal. Rules of Court, rule 8.276(b)(1); *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 919 [sanctions may not be sought in the respondent's brief].)  The request is denied.

**DISPOSITION**

The judgment is affirmed.  Orlando Scandrick is awarded his costs on appeal.

NOT TO BE PUBLISHED.

ADAMS, J.*

We concur:

EDMON, P. J.

EGERTON, J.

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.