[No. B233924. Second Dist., Div. Four. Apr. 10, 2012.]

BANK OF AMERICA, N.A., Plaintiff and Appellant, v.
MICHAEL MITCHELL, Defendant and Respondent.

1200

1202

## Counsel

The Dreyfuss Firm and Bruce Dannemeyer for Plaintiff and Appellant.

Law Offices of Ulric E. J. Usher, Ulric E. J. Usher and Richard Kavonian for Defendant and Respondent.

## Opinion

**SUZUKAWA, J.**—Appellant Bank of America's (Bank) predecessor in interest loaned respondent Michael Mitchell (Mitchell) $315,000 to purchase a home, secured by two notes and first and second deeds of trust. When Mitchell defaulted on the loan, the lender foreclosed and sold the property. The lender then assigned the second deed of trust to the Bank, which initiated the present action to recover the indebtedness evidenced by the note. Mitchell demurred, and the court sustained the demurrer without leave to amend, concluding that the Bank's action was barred by California's antideficiency law. The Bank appeals from the judgment of dismissal and from the subsequent award of prevailing party attorney fees to Mitchell. We affirm.

### STATEMENT OF THE CASE

The Bank filed the present action on September 16, 2010, and it filed the operative first amended complaint (complaint), asserting causes of action for

breach of contract, open book account, and money lent, on December 2, 2010. The complaint alleges that Mitchell obtained a loan from GreenPoint Mortgage Funding, Inc. (GreenPoint), on or about September 14, 2006. The loan was evidenced by a note secured by a deed of trust recorded against real property located at 45245 Kingtree Avenue, Lancaster, California (the property). The security for the loan was eliminated by a senior foreclosure sale in 2009. Because Mitchell defaulted on payments owing on the loan, the complaint alleged that he breached the terms of the contract, resulting in damage to the Bank in the principal sum of $63,000, plus interest at the note rate of 11.625 percent from March 1, 2010, through the date of judgment.

Mitchell demurred. Concurrently with his demurrer, he sought judicial notice of several documents, including two deeds of trust, a notice of trustee's sale, and a trustee's deed upon sale. On the basis of these documents, he contended that on September 14, 2006, GreenPoint made him two loans to purchase the property, with a note and deed of trust for each loan recorded against the property. The first note and deed of trust were for $252,000, and the second note and deed of trust were for $63,000. Both deeds of trust were recorded on September 21, 2006. Mitchell defaulted on the notes sometime in 2008. A notice of default was recorded, and the property was sold at trustee sale for $53,955.01 on November 6, 2009. More than a year later, on November 18, 2010, GreenPoint assigned the second deed of trust to Bank of America, which subsequently filed the present action to recover on the second note and deed of trust. Mitchell contended that the action was barred by California's antideficiency legislation, which bars a deficiency judgment following nonjudicial foreclosure of real property.

The trial court granted Mitchell's request for judicial notice and sustained the demurrer without leave to amend on January 27, 2011, concluding that the Bank's breach of contract and common counts claims seek recovery of the balance owed on the obligation secured by the second deed of trust and, thus, are barred by the antideficiency statutes as a matter of law. On April 7, 2011, the court awarded Mitchell prevailing party attorney fees of $8,400 and costs of $534.72.

Judgment for Mitchell was entered on July 8, 2011. The Bank appealed from the award of attorney fees on June 17, 2011, and from the judgment on August 8, 2011. We ordered the two appeals consolidated on October 13, 2011.

## STANDARD OF REVIEW

"A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of

action or discloses a complete defense. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189]; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 [2 Cal.Rptr.3d 396].) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of ·which judicial notice has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569].) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid.*)" (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 205 [129 Cal.Rptr.3d 433].)

"If we determine the facts as pleaded do not state a cause of action, we then consider whether the court abused its discretion in denying leave to amend the complaint. (*McClain v. Octagon Plaza, LLC* [(2008)] 159 Cal.App.4th [784,] 791–792 [71 Cal.Rptr.3d 885].) It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend if the plaintiff demonstrates a reasonable possibility that the defect can be cured by amendment. (*Schifando v. City of Los Angeles*[, *supra*,] 31 Cal.4th [at p.] 1081 . . . .)" (*Estate of Dito* (2011) 198 Cal.App.4th 791, 800–801 [130 Cal.Rptr.3d 279].)

Attorney fee awards normally are reviewed for abuse of discretion. In the present case, however, the Bank contends that the trial court lacked the authority as a matter of law to award attorney fees in any amount. Accordingly, our review is de novo. (*Connerly v. Sate Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1].)

## DISCUSSION

### I. *The Trial Court Properly Sustained the Demurrer Without Leave to Amend*

#### A. *Code of Civil Procedure Section 580d*

██ " 'In California, as in most states, a creditor's right to enforce a debt secured by a mortgage or deed of trust on real property is restricted by statute. Under California law, "the creditor must rely upon his security before enforcing the debt. (Code Civ. Proc., §§ 580a, 725a, 726.) If the security is insufficient, his right to a judgment against the debtor for the deficiency may be limited or barred . . . ." [Citation.]' [Citation.]" (*In re Marriage of Oropallo* (1998) 68 Cal.App.4th 997, 1003 [80 Cal.Rptr.2d 669].)

Code of Civil Procedure section 580d (section 580d) prohibits a creditor from seeking a judgment for a deficiency on all notes "secured by a deed of

trust or mortgage upon real property . . . in any case in which the real property . . . has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust."[1] The effect of section 580d is that " 'the beneficiary of a deed of trust executed after 1939 cannot hold the debtor for a deficiency unless he uses the remedy of judicial foreclosure . . . .' " (*Simon v. Superior Court* (1992) 4 Cal.App.4th 63, 71 [5 Cal.Rptr.2d 428] (*Simon*).)

In *Roseleaf Corp. v. Chierighino* (1963) 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97] (*Roseleaf*), the California Supreme Court held that where two deeds of trust are held against a single property and the senior creditor nonjudicially forecloses on the property, section 580d does not prohibit the holder of the junior lienor "whose security has been rendered valueless by a senior sale" from recovering a deficiency judgment. (59 Cal.2d at p. 39.) There, defendant Chierighino purchased a hotel from plaintiff Roseleaf Corporation. The consideration for the hotel included three notes, each secured by a second trust deed on parcels owned by Chierighino. After the sale of the hotel, the third parties who held the first trust deeds on the three parcels nonjudicially foreclosed on them, rendering Roseleaf's second trust deeds valueless. Roseleaf then brought an action to recover the full amount unpaid on the three notes secured by the second trust deeds. (*Id.* at p. 38.)

The trial court entered judgment for Roseleaf. Chierighino appealed, contending that Roseleaf's action was barred by section 580d, but the Supreme Court disagreed and affirmed. It explained that the purpose of section 580d was to "put judicial enforcement [of powers of sale] on a parity with private enforcement." (*Roseleaf, supra*, 59 Cal.2d at p. 43.) That purpose, the court said, would not be served by applying section 580d against a nonselling junior lienor: "Even without the section the junior has fewer rights after a senior private sale than after a senior judicial sale. He may redeem from a senior judicial sale (Code Civ. Proc., § 701), or he may obtain a deficiency judgment. [Citations.] After a senior private sale, the junior has no right to redeem. This disparity of rights would be aggravated were he also denied a right to a deficiency judgment by section 580d. There is no purpose in denying the junior his single remedy after a senior private sale while leaving

---

[1] The full text of section 580d is as follows: "No judgment shall be rendered for any deficiency upon a note secured by a deed of trust or mortgage upon real property or an estate for years therein hereafter executed in any case in which the real property or estate for years therein has been sold by the mortgagee or trustee under power of sale contained in the mortgage or deed of trust.

"This section does not apply to any deed of trust, mortgage or other lien given to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or which is made by a public utility subject to the Public Utilities Act (Part 1 (commencing with Section 201) of Division 1 of the Public Utilities Code)."

him with two alternative remedies after a senior judicial sale. The junior's right to recover should not be controlled by the whim of the senior, and there is no reason to extend the language of section 580d to reach that result." (59 Cal.2d at p. 44.)

In *Simon, supra*, 4 Cal.App.4th 63, the court held that the rule articulated in *Roseleaf* did not apply to protect a junior lienor who also held the senior lien. There, Bank of America (Lender) lent the Simons $1,575,000, for which the Simons gave it two separate promissory notes. Each note was secured by a separate deed of trust naming the Bank as beneficiary and describing the same real property (the property). Subsequently, the Simons defaulted on the senior note and the Lender foreclosed. The Lender purchased the property at the nonjudicial foreclosure sale and then filed an action to recover the unpaid balance of the junior note. (*Id.* at p. 66.)

■ After detailing the history of the antideficiency legislation and the governing case law, the court held that section 580d barred the Lender's deficiency causes of action. It noted that in *Roseleaf*, the Supreme Court explained that the purpose of section 580d was to create parity between judicial and nonjudicial enforcement. Such parity would not be served "if [the Lender] here is permitted to make successive loans secured by a senior and junior deed of trust on the same property; utilize its power of sale to foreclose the senior lien, thereby eliminating the Simons' right to redeem; and having so terminated that right of redemption, obtain a deficiency judgment against the Simons on the junior obligation whose security [the Lender], thus, made the choice to eliminate." (*Simon, supra*, 4 Cal.App.4th at p. 77.) The court continued: "Unlike a true third party sold-out junior, [the Lender's] right to recover as a junior lienor which is also the purchasing senior lienor is obviously not controlled by the 'whim of the senior.' We will not sanction the creation of multiple trust deeds on the same property, securing loans represented by successive promissory notes from the same debtor, as a means of circumventing the provisions of section 580d. [Fn. omitted.] The elevation of the form of such a contrived procedure over its easily perceived substance would deal a mortal blow to the antideficiency legislation of this state. Assuming, arguendo, legitimate reasons do exist to divide a loan to a debtor into multiple notes thus secured, section 580d must nonetheless be viewed as controlling where, as here, the senior and junior lenders and lienors are identical and those liens are placed on the same real property. Otherwise, creditors would be free to structure their loans to a single debtor, and the security therefor, so as to obtain on default the secured property on a trustee's sale under a senior deed of trust; thereby eliminate the debtor's right of redemption thereto; and thereafter effect an excessive recovery by obtaining a deficiency judgment against that debtor on an obligation secured by a junior lien the creditor chose to eliminate." (*Id.* at pp. 77–78.)

B. Simon *and* Roseleaf *Bar a Deficiency Judgment in the Present Case*

*Simon* is dispositive of the present case. Here, Mitchell executed two promissory notes, for $252,000 and $63,000, secured by the first and second deeds of trust in the property. As in *Simon*, the first and second deeds of trust were held by a single lender, GreenPoint. GreenPoint, as beneficiary under the first deed of trust, chose to exercise its power of sale by holding a nonjudicial foreclosure sale. GreenPoint thus was not a "sold-out junior" lienor and would not have been permitted to obtain a deficiency judgment against Mitchell under the rule articulated in *Simon*. The result is no different because GreenPoint, *after the trustee sale*, assigned the second deed of trust to the Bank. "An assignment transfers the interest of the assignor to the assignee. Thereafter, ' "[t]he assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment." ' [Citation.]" (*Manson, Iver & York v. Black* (2009) 176 Cal.App.4th 36, 49 [97 Cal.Rptr.3d 522].) Accordingly, because GreenPoint could not have obtained a deficiency judgment against Mitchell, the Bank also is precluded from doing so.

The Bank urges that *Simon* is distinguishable because in that case, the lender ultimately purchased the property for a credit bid at its own foreclosure sale, whereas in this case, the property was sold to a third party. The Bank thus contends that "[u]nder *Simon* if (a) both loans are held by the same lender and (b) that lender acquires the property at the foreclosure sale, the risk of manipulation by the lender is too great, so no deficiency is allowed. But if either is missing, the risk of manipulation is reduced, and a deficiency should be allowed." Like the trial court, we reject the contention that the lender must have acquired the property at the foreclosure sale for *Simon* to apply. Although *Simon* noted the lender's purchase at the foreclosure sale, that purchase was not material to its holding. Instead, the court's focus was on the lender's dual position as holder of the first and second deeds of trust, and its consequent ability to protect its own interest. (*Simon, supra*, 4 Cal.App.4th at p. 72 ["[The Lender] was not a third party sold-out junior lienholder as was the case in *Roseleaf*. As the holder of both the first and second liens, [the Lender] was fully able to protect its secured position. It was not required to protect its junior lien from its own foreclosure of the senior lien by the investment of additional funds. Its position of dual lienholder eliminated any possibility that [the Lender], after foreclosure and sale of the liened property under its first lien, might end up with no interest in the secured property, the principal rationale of the court's decision in *Roseleaf*."].)

The Bank further contends that the present case is distinguishable from *Simon* because the presence of a third party purchaser at the foreclosure sale

prevented the kind of "manipulation" possible in *Simon*. According to the Bank, "[w]hen the foreclosure sale results in acquisition by a third party, who competed with the foreclosing lender and all other bidders at the public auction, a low-ball bid is impossible. If the foreclosing lender bids below market, it will be outbid; it will not acquire the property. The lender cannot manipulate the price. The presence of third party bids demonstrates the market is at work to achieve a fair price. Third party bids provide the functional equivalent of a right of redemption. By outbidding the lender, the third party prevents the lender from manipulating the process." We disagree. Whatever the merits of the Bank's argument as a matter of policy, it has no support in the statute, and the Bank suggests none. Indeed, nothing in the antideficiency legislation suggests that the presence of a third party bidder at a foreclosure sale excepts the sale from the legislation and permits the lender to seek a deficiency judgment.[2]

For all the foregoing reasons, section 580d bars the deficiency judgment the Bank seeks in the present case and, thus, the trial court properly sustained the demurrer. Because the Bank suggests no way in which the legal defects identified could be cured by amendment, the demurrer was properly sustained without leave to amend.

## II. The Trial Court Properly Awarded Mitchell Attorney Fees

### A. Relevant Facts

Following the trial court's order sustaining Mitchell's demurrer without leave to amend, Mitchell filed a motion for attorney fees pursuant to Civil Code section 1717. Two days later, on February 10, 2011, the Bank filed a request for dismissal with prejudice. It then filed opposition to the motion for attorney fees, contending that there could be no prevailing party within the meaning of Civil Code section 1717 because it had voluntarily dismissed its action.[3]

On March 8, 2011, the trial court vacated the dismissal and granted Mitchell's motion for attorney fees. It explained that because it had sustained a demurrer to the Bank's complaint without leave to amend, the Bank did not have a right pursuant to Code of Civil Procedure section 581 to voluntarily dismiss the action, and the dismissal had been entered in error. It awarded Mitchell attorney fees of $8,400 and costs of $534.72.

---

[2] Although not relevant to our analysis, we note that the property's foreclosure sale purchase price of $53,955.01 does not convincingly demonstrate, as the Bank asserts, that the presence of a third party bidder made a "low-ball bid . . . impossible."

[3] In its opposition, the Bank represented to the court as follows: "The litigation is over. There will be no appeal."

### B. *Analysis*

The Bank contends that the trial court lacked authority to award Mitchell attorney fees. It urges that under Code of Civil Procedure section 581, it had an absolute right to dismiss its case voluntarily, so long as it did so *with prejudice*. Because it did so, there was no prevailing party pursuant to Civil Code section 1717, subdivision (b)(2), and thus the trial court lacked authority to award Mitchell contractual attorney fees.

■ The Bank is correct that under Civil Code section 1717, a defendant in a contract action is not deemed a prevailing party where the plaintiff voluntarily dismisses the action. (*Id.*, subd. (b)(2) ["Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."].) Therefore, if the Bank's dismissal was valid, the Bank is correct that the trial court erred in awarding attorney fees. The trial court determined, however, that the Bank's dismissal was *not* valid, the issue to which we now turn.

■ Pursuant to Code of Civil Procedure section 581, a plaintiff may voluntarily dismiss an action, "with or without prejudice," at any time before the "actual commencement of trial." (§ 581, subds. (b)(1), (c).) Further, a plaintiff may voluntarily dismiss an action with prejudice "at any time before the submission of the cause." (*Estate of Somers* (1947) 82 Cal.App.2d 757, 759 [187 P.2d 433].) Upon the proper exercise of the right of voluntary dismissal, a trial court " 'would thereafter lack jurisdiction to enter further orders in the dismissed action.' (*Wells v. Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 784 [176 Cal.Rptr. 104, 632 P.2d 217].) 'Alternatively stated, voluntary dismissal of an entire action deprives the court of both subject matter and personal jurisdiction in that case, except for the limited purpose of awarding costs and . . . attorney fees. [Citations.]' (*Gogri v. Jack in the Box, Inc.* (2008) 166 Cal.App.4th 255, 261 [82 Cal.Rptr.3d 629].)" (*Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp.* (2009) 174 Cal.App.4th 67, 76 [94 Cal.Rptr.3d 468].)

A plaintiff's right to voluntarily dismiss an action before commencement of trial is not absolute, however. (*Lewis C. Nelson & Sons, Inc. v. Lynx Iron Corp., supra,* 174 Cal.App.4th at pp. 76–77; *Zapanta v. Universal Care, Inc.* (2003) 107 Cal.App.4th 1167, 1171 [132 Cal.Rptr.2d 842].) "Code of Civil Procedure section 581 recognizes exceptions to the right; other limitations have evolved through the courts' construction of the term 'commencement of trial.' These exceptions generally arise where the action has proceeded to a determinative adjudication, or to a decision that is tantamount to an adjudication." (*Harris v. Billings* (1993) 16 Cal.App.4th 1396, 1402 [20 Cal.Rptr.2d 718].)

■ The Supreme Court found such a "determinative adjudication" in *Goldtree v. Spreckels* (1902) 135 Cal. 666 [67 P. 1091] (*Goldtree*). There, the defendant's demurrer to each of the plaintiff's causes of action was sustained without leave to amend as to the first two. The plaintiff then filed a written request to dismiss the entire case, and the court clerk entered an order of dismissal. The trial court vacated the dismissal, and the plaintiff appealed. (*Id.* at pp. 667–668.) The Supreme Court affirmed: "In our opinion the subdivision of the section 581 of the Code of Civil Procedure in question cannot be restricted in its meaning to trials of the merits after answer, for there may be such a trial on a general demurrer to the complaint as will effectually dispose of the case where the plaintiff has properly alleged all the facts which constitute his cause of action. If the demurrer is sustained, he stands on his pleading and submits to judgment on the demurrer, and, if not satisfied, has his remedy by appeal. In such a case, we think, there would be a trial within the meaning of the code, and the judgment would cut off the right of dismissal, unless it was first set aside or leave given to amend. [¶] The clerk had no authority, therefore, to enter the dismissal, and being void the court rightly set it aside." (*Id.* at pp. 672–673.)

■ The Supreme Court reached a similar result in *Wells v. Marina City Properties, Inc.*, *supra*, 29 Cal.3d 781 (*Wells*). There, the trial court sustained the defendant's demurrer with leave to amend. The plaintiff failed to amend within the time provided, but instead sought to voluntarily dismiss the action without prejudice. The Supreme Court held that the voluntary dismissal was improperly entered: "[O]nce a general demurrer is sustained with leave to amend and plaintiff does not so amend within the time authorized by the court or otherwise extended by stipulation or appropriate order, he can no longer voluntarily dismiss his action pursuant to section 581, subdivision 1, even if the trial court has yet to enter a judgment of dismissal on the sustained demurrer." (*Id.* at p. 789.)

In the present case, the trial court sustained defendant's demurrer without leave to amend on January 27, 2011. Although the trial court had not yet entered a judgment of dismissal when the Bank filed a request for voluntary dismissal on February 10, 2011, as in *Goldtree* and *Wells*, the trial court had already made a determinative adjudication on the legal merits of the Bank's claim. Accordingly, as in those cases, the Bank no longer had the right to voluntarily dismiss under Code of Civil Procedure section 581.

The Bank contends that the present case is distinguishable from *Goldtree* and *Wells* because here it sought to dismiss *with prejudice*, while in those cases the attempted dismissal was *without prejudice*. We do not agree. The

court rejected a similar contention in *Vanderkous v. Conley* (2010) 188 Cal.App.4th 111 [115 Cal.Rptr.3d 249] (*Vanderkous*). There, the plaintiff and the defendant formerly had lived together on a multilot parcel owned by the plaintiff. An arbitration award entered after their relationship ended directed the parties to cooperate in a lot line adjustment that would result in the home and a garage on a single lot to be owned by the defendant, with the remainder of the parcel to be owned by the plaintiff. The plaintiff was also to have access and utility easements over the garage area for the benefit of his parcel. The easements were executed by the defendant and recorded, but the garage and surrounding property were never transferred because the plaintiff never recorded either the lot line adjustment or the grant deed to the defendant for the garage and setback area. When the plaintiff subsequently sought to record a subdivision map, the title company that was to record the map refused to do so because the grants of easement by the defendant created a cloud on the plaintiff's title. The plaintiff thus filed a complaint for declaratory relief and to quiet title. (*Id.* at pp. 114–115.)

Following a trial, the court filed a statement of decision that ordered the defendant to execute a quitclaim deed in favor of the plaintiff, and ordered the plaintiff to compensate the defendant in an amount equal to the full market value of the garage area. If the parties could not agree on the amount the plaintiff was to pay the defendant, each party was ordered to submit an appraisal for the court's final determination. The defendant submitted an appraisal that valued the garage area at $410,000, and the plaintiff submitted an appraisal that valued the property at $75,000, but also requested a continuance and an evidentiary hearing on the value of the property. The day before the evidentiary hearing, the plaintiff filed a request for dismissal with prejudice with the clerk. The trial court ruled that the plaintiff's attempt to dismiss was void *ab initio* and ordered the plaintiff to pay the defendant $199,246 plus attorney fees and costs. (*Vanderkous, supra,* 188 Cal.App.4th at p. 116.)

█ The plaintiff appealed, contending that the trial court lacked jurisdiction to set aside his voluntary dismissal of his action and to award attorney fees. (*Vanderkous, supra,* 188 Cal.App.4th at p. 117.) The court disagreed and affirmed the judgment. It explained: "Section 581, subdivision (d) provides that a complaint may be dismissed with prejudice when the plaintiff abandons it *before the final submission of the case.* Here, the court's statement of decision following the three-day court trial, states '[t]he matter was deemed submitted on March 10, 2008, following receipt of closing briefs from both sides.' The statement of decision resolved Vanderkous's quiet title cause of action and his claim for declaratory relief, and ordered him to compensate Conley for the fair market value of property she was required to quitclaim to

him. [¶] . . . [¶] Because Vanderkous has not convinced us that he had an absolute right to dismiss his complaint, we also reject his argument that the trial court lacked jurisdiction to set aside his attempted dismissal. [Citations.] A contrary rule would enable Vanderkous to avoid compliance with the court's decision and would undermine the trial court's authority to provide for the orderly conduct of proceedings before it and compel obedience to its judgments, orders, and process. (See § 128, subd. (a).)" (*Vanderkous, supra,* at pp. 117–118; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 11:28, p. 11-16 (rev. # 1, 2011) ["[O]nce the case is *finally submitted for decision,* there is no further right to dismiss with prejudice. At that point, plaintiffs cannot avoid an adverse ruling by abandoning the case."].)

The present case is analogous. As in *Vanderkous,* the Bank sought to dismiss *after* the court made a dispositive ruling against it, not before. To allow the Bank to dismiss at that late stage would permit procedural gamesmanship inconsistent with the trial court's authority to provide for the orderly conduct of proceedings before it.

We do not agree with the Bank that its right to dismiss is supported by this division's decision in *Marina Glencoe, L.P. v. Neue Sentimental Film AG* (2008) 168 Cal.App.4th 874 [85 Cal.Rptr.3d 800] (*Marina Glencoe*). There, after the plaintiff presented its evidence on the single bifurcated issue of alter ego liability, the defendant moved for judgment. The court heard argument on the motion but did not rule; the following day, before a ruling on the pending motion, the plaintiff voluntarily dismissed the action with prejudice. The defendant moved for prevailing party attorney fees, and the court denied the motion, concluding that the defendant was not entitled to such fees under Civil Code section 1717. The defendant appealed. We affirmed, noting that because the plaintiff voluntarily dismissed with prejudice, "[i]ts intent was to end the litigation, not to manipulate the judicial process to avoid its inevitable end. This was entirely proper." (168 Cal.App.4th at p. 878.)

The present case is distinguishable from *Marina Glencoe.* In *Marina Glencoe,* the plaintiff dismissed its action *before* the trial court ruled on a dispositive motion, and thus judgment in the defendant's favor was not inevitable. In the present case, in contrast, the trial court had already sustained Mitchell's demurrer without leave to amend, and thus judgment against the Bank had already "ripened to the point of inevitability." (*Marina Glencoe, supra,* 168 Cal.App.4th at p. 878.) Accordingly, unlike in *Marina Glencoe,* the Bank no longer had the right to voluntarily dismiss its action, either with or without prejudice.

## DISPOSITION

We affirm the judgment of dismissal and award of attorney fees. Mitchell shall recover his appellate costs.

Willhite, Acting P. J., and Manella, J., concurred.