Filed 6/24/14  German American Capital Corp. v 1495 Pacific Highway CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| GERMAN AMERICAN CAPITAL CORPORATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>1495 PACIFIC HIGHWAY, LLC et al.,<br><br>Defendants and Respondents. | D063446<br><br><br>(Super. Ct. No. 37-2011-00098491-CU-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Timothy B. Taylor, Judge.  Reversed.

Greenwald Pauly Foster & Miller and Andrew J. Haley for Plaintiff and Appellant.

English & Gloven and Donald A. English for Defendants and Respondents.

The predecessors in interest of plaintiff German American Capital Corporation (German American) made two loans to defendant 1495 Pacific Highway, LLC (Pacific Highway) for the purchase of a commercial building, which served as collateral for the loans.  The loans were secured by deeds of trust that contained (among other things)

duty-to-maintain and due-on-sale provisions, as well as attorney fee clauses and provisions permitting appointment of a receiver in the event of default. German American brought this contract-based action against Pacific Highway; Berkson Realty Advisors, LLC (Berkson Realty), a guarantor of the loans that had acquired an interest in the property; and others who are not parties to this appeal. As discussed more fully, *post*, the complaint alleged various breaches of the loan documents and asserted "causes of action" (1) against all defendants for appointment of a receiver (to take control of and manage the property) and judicial foreclosure of the two deeds of trust and (2) against Berkson Realty for breach of the written guaranties.

After the court denied German American's ex parte request for appointment of a receiver (but granted certain other relief) and also denied German American's subsequent pretrial request for appointment of a receiver and motion for preliminary injunction, German American voluntarily dismissed the complaint without prejudice. Pacific Highway and Berkson Realty thereafter brought a motion to recover contractual prevailing-party attorney fees under Civil Code[1] section 1717. German American opposed the motion, arguing that section 1717, subdivision (b)(2) (hereafter section 1717(b)(2)) barred the attorney fees request because German American had voluntarily dismissed the complaint prior to an adjudication of its claims on the merits, and, thus, Pacific Highway and Berkson Realty were not prevailing parties for purposes of section 1717. The court granted the motion and awarded attorney fees to Pacific Highway and

---

[1]    Undesignated statutory references will be to the Civil Code unless otherwise specified.

Berkson Realty in the amount of $90,000, finding that the gravamen of the complaint was "the alleged need for a receiver," it had twice denied German American's request for appointment of a receiver, and Pacific Highway and Berkson Realty were the prevailing parties.

*Contentions and holding*

German American appeals, contending (1) the court erred as a matter of law in granting the motion for attorney fees because section 1717(b)(2) bars a prevailing-party fee award where the action was voluntarily dismissed; and (2) in the event this court concludes that the trial court made a final determination of German American's contract claims and, thus, that section 1717(b)(2) does not apply, the trial court erred in determining that Pacific Highway and Berkson Realty were the prevailing parties.

We conclude section 1717(b)(2) barred Pacific Highway and Berkson Realty's attorney fees request because German American properly dismissed its complaint prior to a determinative adjudication of its contract-based claims. Accordingly, we reverse the order awarding attorney fees to Pacific Highway and Berkson Realty.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Factual Background*[2]

German American's predecessors-in-interest, First National Bank and its successor, Pacific Western Bank, made two loans to Pacific Highway that were secured by an office building at 1495 Pacific Highway in San Diego, California (the property),

_____

[2]    Given the narrow legal issue presented in this appeal, the following summary of the factual background is brief.

3

which Pacific Highway purchased in 2000. The first loan, in the initial principal amount of $2.965 million, was memorialized in numerous loan documents, including a promissory note, a deed of trust (the first trust deed), a business loan agreement, and an assignment of rents.

The second loan, for an initial amount of $510,000 that the parties later increased to $1,146,469, was memorialized in similar loan documents, including a promissory note, a deed of trust (the second trust deed), and a business loan agreement.

Berkson Realty and Howard Berkson each executed commercial guaranties of the first and second loans, thereby making themselves liable in the event Pacific Highway failed to pay off the loans.

B. *Procedural Background*

1. *Complaint*

In September 2011 German American filed a verified complaint naming Pacific Highway, Berkson Realty, and several individuals (who are not parties to this appeal) as defendants. German American alleged Pacific Highway had breached the loan documents by (1) transferring ownership of the property in 2009 without the consent of Pacific Western Bank, thereby triggering the due-on-sale provisions of the deeds of trust, and then failing to pay off the loans when German American exercised its rights under those provisions and demanded that the full amount of the loans be paid; (2) failing to furnish German American with information it requested regarding the damage to the property caused by a neighboring property owner, the status of any repairs that had been made, and plans to complete any repairs that still needed to be made; (3) failing to furnish

4

German American with financial information it requested concerning the "status of the judgment and/or settlement" Pacific Highway obtained in excess of $2.5 million in the lawsuit it filed against that neighboring property owner[3] (hereafter referred to as the *Intergulf* lawsuit), including a full accounting of the proceeds—which allegedly constituted collateral for the loans—that it had received from the judgment and/or settlement; and (4) failing to maintain and repair the property, including failing to make repairs that arose out of and related to the damages that were the subject of the *Intergulf* lawsuit.

German American also alleged Pacific Highway was "in further default" of the loan documents as a result of the commencement of chapter 7 bankruptcy proceedings (11 U.S.C. § 701 et seq.) by a guarantor (Howard Berkson).

German American's complaint asserted four "causes of action." In the first, titled "Specific Performance for Appointment of Receiver" and alleged against all defendants, German American prayed for (1) "specific performance by [Pacific Highway] of the provisions of the Deeds of Trust and Assignment of Rents, giving [German American] the right to enter into possession of the Property, either in person or by a receiver appointed by [the] Court to protect and preserve the Property, to collect the rents and/or issues and profits thereof, including . . . the proceeds arising from . . . the *Intergulf* Lawsuit, and . . . to apply the sums so collected to the payment of the sums due under the Loan Documents"; and (2) issuance of a temporary restraining order, preliminary

---

[3]    *1495 Pacific Highway, LLC v. Intergulf Development* (*USA*) *Corp. et al.* (Super. Ct. San Diego County, 2008, No. 37-2008-00094011-CU-PO-CTL).

injunction, and permanent injunction prohibiting the defendants from directly or indirectly engaging in specific conduct, such as "misappropriating, misusing or otherwise transferring any . . . proceeds arising out of . . . the *Intergulf* Lawsuit."

In the second and third causes of action—titled "Judicial Foreclosure of First Deed of Trust" and "Judicial Foreclosure of Second Deed of Trust," respectively—which were alleged against all defendants, German American prayed for (among other things) (1) judgment against Pacific Highway for the "principal outstanding amounts owed" on the loans, plus "accrued and default interest, late charges, attorney's fees and costs and trustee's fees and costs" due under the loan documents and guaranties; (2) judicial foreclosure of the first and second deeds of trust and sale of the collateral (the property); (3) judgment against Berkson Realty "for any deficiency to the extent allowed under the Guaranties"; and (4) appointment of a receiver "to preserve and protect the Property until the date of the foreclosure sale."

Finally, in the fourth cause of action—titled "Breach of Written Guaranties"—which was alleged only against Berkson Realty, German American prayed for judgment "in the sum of at least $2,559,297.83 on its guaranties of the First Loan and $1,089,803.44 on its guaranties of the Second Loan," plus "accrued and default interest, late charges, attorneys' fees and costs and trustee's fees and costs" due under the loan documents and guaranties.

6

2. *German American's ex parte application for appointment of receiver and issuance of a temporary restraining order*

In early October 2011 German American filed its ex parte application for appointment of a receiver and issuance of a temporary restraining order.

a. *Ex parte hearings*

At the ex parte hearing on October 6, 2011, the court initially indicated that its tentative ruling was to grant German American's request for appointment of a receiver and set the matter for a hearing on an order to show cause why the appointment should not be confirmed. The court stated it was "quite clear that there was a violation" of the due-on-sale clause of the deed of trust because Pacific Highway had "transferred title to the property without getting [German American's] okay," and the court "[did] not see [Pacific Highway] being very forthcoming about what happened in that settlement and where the money went and where the money is intended to go."

Pacific Highway's counsel informed the court that "[the] issue appear[ed] to have been resolved" because title had been transferred back to Pacific Highway, and the funds from the settlement were in counsel's trust account and were not under Pacific Highway's control. Pacific Highway's counsel told the court his firm had a superior lien and suggested that the funds be held in the trust account pending a hearing on the matter in lieu of appointing a receiver "to take money out of [the] trust account."

German American's counsel informed the court he had received some signed title transfer documents that morning, but they had not yet been recorded and the "due on sale

7

problems" had not been cured. Counsel also expressed concern regarding the lack of accounting of the settlement proceeds.

Pacific Highway's counsel acknowledged that the property had been damaged, the damage "ha[d] been rectified in part," and "only a portion" of the settlement funds "went to property damage."

German American's counsel responded that the settlement funds were German American's "collateral," and the appointment of a receiver was necessary to take over possession of the property because he had been asking for, but had not received, information about how much of the settlement funds had been distributed or about which repairs were needed.

The court continued the ex parte matter to the next day.

i. *Ex parte rulings*: *Denial of German American's application for appointment of receiver; imposition of protective order regarding the Intergulf settlement proceeds*

Following additional arguments by both counsel the next day, the court denied German American's ex parte request for a receivership, but, "in the alternative," it imposed a protective order over the proceeds of the *Intergulf* lawsuit settlement in the amount of $752,358, and ordered that the funds be placed in a segregated account and not disbursed absent a court order.

The court set the matter for another hearing based on a "more thorough presentation" by both sides.

3.  *German American's renewed application for appointment of receiver, and its related motion for preliminary injunction*

German American thereafter filed supplemental briefing in support of its application for appointment of a receiver and moved for issuance of a preliminary injunction.

a. *Hearing and rulings*

On October 28, 2011, following a hearing on the matter, the court again denied German American's request for appointment of a receiver and also denied its request for issuance of a preliminary injunction.  The court found German American "ha[d] not established a receiver [was] necessary for the property or to preserve any of its rights, as the security for the loan [was] intact and [was] producing positive cash flow."  It also found German American was "receiving all monthly payments as required by the loan agreements, and there [was] no suggestion rents [were] being diverted."  The court further found the evidence showed the property was well-maintained and fully leased, funds were in a segregated account in an amount "well in excess of any monies necessary to repair damages caused by adjacent construction," and "the value of the property exceed[ed] the loan."

However, the court also ruled that the order sequestering $752,358, which the court had entered at the ex parte hearing, would "remain in effect, and the court [would] set a hearing on a date to be discussed with counsel to allow the parties time to negotiate the terms of an agreed set-aside account that will enable the repairs to be completed."  The court set the matter for another hearing in December 2011.

9

4. *December 2011 order reducing amount of sequestered funds*

The parties continued to engage in negotiations regarding the scope of repairs to the property, and Pacific Highway and Berkson Realty submitted a proposed repair plan to the court. The cost of the proposed repairs was $296,073.

At the December 2011 hearing, after considering evidence submitted by the parties and hearing arguments by their counsel, the court ordered that the sum of $296,073 remain sequestered under judicial supervision for the repairs of the property and that the balance of $456,285 in sequestered funds be released for disbursement.

5. *March 2012 case management conference*

The case management conference (CMC) was held in late March 2012, three months after the December hearing at which the court sequestered funds for the repairs. In its case management statement, German American informed the court that the repairs had not yet commenced and Pacific Highway and Berkson Realty had not provided information that German American had requested:

> "[German American] has requested that Defendants provide them with a timeline for repairs to the property and documentation regarding same, including permits. Defendants have yet to provide this information. [German American] requests that this Court assist in establishing a schedule and protocol so that funds may be released to timely move forward with repairs."

The court continued the CMC to a date in July 2012.

6. *German American's second ex parte application for appointment of receiver and a temporary restraining order, and its withdrawal of this application*

In early June 2012 German American filed a second ex parte application for appointment of a receiver and a temporary restraining order. German American alleged

10

that Pacific Highway was again in material default by failing to pay the balance—in excess of $1.104 million—owing on the *second* loan, which had matured in mid-May 2012. German American also alleged that Pacific Highway had "failed to repair and maintain" the property despite its promises to do so, and despite the court's sequestration of "$296,073 of the *Intergulf* lawsuit proceeds for purposes of needed repairs."

7. *German American's July 2012 Status Conference Statement*

In early July 2012, in anticipation of the CMC scheduled for later that month, German American filed its status conference statement in which it asserted that Pacific Highway was "in further breach of the loan documents by failing to pay-off the second loan . . . upon loan maturity in May 2012" and that it (German American) had recorded a notice of default and election to sell in early June. German American also stated that Pacific Highway had not completed repairs to the property, and that of the $296,073 in sequestered funds, about $42,000 had been spent on roof repairs and about $16,000 had been spent on other repairs.

In its status conference statement, German American also informed the court that, in response to German American's second ex parte application for appointment of a receiver and a temporary restraining order (discussed, *ante*), Pacific Highway "began cooperating" by informing German American that it planned to pay off the "overdue loan" and that it had entered into a contract to sell the property with a closing date in late September 2012.

German American further informed the court in its status conference statement that, based on Pacific Highway's foregoing representations, German American had

11

repeatedly continued the hearing on its second ex parte application for appointment of a receiver, had then "withdr[awn]" that application, and the action would become moot if Pacific Highway sold the property and paid off the loans. Stating that it anticipated the case would "remain relatively inactive in the near term" as Pacific Highway "continue[d] to proceed with its agreement for the sale of the Property," German American requested that the CMC be continued to mid-October 2012 "after the anticipated sale closing date."

8. *Continuance of the July 2012 CMC*

The court continued the July 2012 CMC to October 12, 2012.

9. *Sale of the property and payment of the balance owing on the loans*

According to a written stipulation submitted by the parties, "[e]scrow for the sale of the Pacific Highway building closed on or about October 5, 2012," and German American "received full payment on its first and second mortgages."

10. *German American's October 2012 voluntary dismissal of its complaint*

Thereafter, German American filed a request for dismissal of its complaint without prejudice. The dismissal was entered on October 10, 2012. On appeal, German American asserts it dismissed the complaint because it had become moot after Pacific Highway sold the property and paid the balance owing on the the loans.

11. *Pacific Highway and Berkson Realty's memorandum of costs and motion for contractual attorney fees; German American's motion to tax costs*

In early November 2012 Pacific Highway and Berkson Realty filed a memorandum of costs seeking $1,005 in costs and indicating they would seek attorney

12

fees by motion. German American responded by bringing a motion to tax costs, which Pacific Highway and Berkson Realty opposed.

Later that month, Pacific Highway and Berkson Realty filed a motion for contractual attorney fees under section 1717, as well as for disgorgement of attorney fees and litigation costs Pacific Highway had paid "under protest." German American opposed the motion, arguing that Pacific Highway and Berkson Realty were not entitled to an award of attorney fees as a matter of law because section 1717(b)(2) bars the recovery of attorney fees incurred in the defense of contract-based claims where, as here, the case has been voluntarily dismissed. German American also argued they were not entitled to an order of disgorgement.

a. *Rulings*

Following a hearing on these matters—discussed in greater detail, *post*—the court denied German American's motion to tax costs and awarded to Pacific Highway and Berkson Realty costs in the amount of $1,005, finding they were the prevailing parties.

The court granted Pacific Highway and Berkson Realty's motion for attorney fees under section 1717 in the amount of $90,000, but denied the motion for disgorgement of attorney fees and costs Pacific Highway had paid to German American. German American's appeal from the order awarding attorney fees followed.

DISCUSSION

German American claims the court erred in awarding to Pacific Highway and Berkson Realty contractual prevailing-party attorney fees under section 1717, subdivision (a) (hereafter § 1717(a)) pursuant to the attorney fees clauses set forth in the deeds of

13

trust. For reasons we shall discuss, we conclude the order awarding attorney fees must be reversed because the award was barred under section 1717(b)(2).

A. *Background*

As already noted, in early November 2012─ after German American voluntarily dismissed its complaint without prejudice in October of that year─Pacific Highway and Berkson Realty filed a memorandum of costs seeking $1,005 in costs and indicating they would seek attorney fees by motion. German American responded by bringing a motion to tax costs, which Pacific Highway and Berkson Realty opposed.

Pacific Highway and Berkson Realty thereafter filed their motion for contractual attorney fees under section 1717. Claiming they were the prevailing parties in this action, Pacific Highway and Berkson Realty asserted they were entitled to recover reasonable attorney fees under section 1717 in the amount of $111,694 pursuant to the attorney fees and costs provisions contained in the deeds of trust. In support of their claim they were the prevailing parties, Pacific Highway and Berkson Realty asserted that German American "did not obtain any of the relief it sought in its complaint"; the court "ruled against German American three times on the material issue in the case, namely[,] that [Pacific Highway] was in material default under the loan"; and the court "repeatedly denied German American's contentions that it should take over [the] property."

German American opposed the motion. Citing *Santisas v. Goodin* (1998) 17 Cal.4th 599 (*Santisas*) and *Chase Manhattan Mortgage Corp. v. Lessel* (1997) 55 Cal.App.4th 10, German American argued that Pacific Highway and Berkson Realty were not entitled to an award of attorney fees as a matter of law because section

14

1717(b)(2) bars the recovery of attorney fees incurred in the defense of contract-based claims when the case has been voluntarily dismissed.

German American also asserted that, even if such a fee award were permissible in a voluntarily dismissed case, it was the prevailing party because Pacific Highway and Berkson Realty had defaulted on the loans and guaranties, and the amount of fees requested was not reasonable.

1. *Rulings*

Following a hearing on these matters, the court denied German American's motion to tax costs and awarded to Pacific Highway and Berkson Realty costs in the requested amount of $1,005, finding they were the prevailing parties. The court stated that the "gravamen of this case was a receivership," German American had "lost on this point twice," and the lawsuit was "entirely unnecessary." The court also stated that "[t]his analysis does not change simply because [German American] got paid. The foreclosure proceeded non-judicially, and the property never went to a trustee's sale because the property was sold and [German American] was paid in full out of escrow. It is clear to the court the payoff was not the result of any court order."

The court granted Pacific Highway and Berkson Realty's motion for prevailing-party attorney fees under section 1717 in the amount of $90,000. The court rejected German American's counsel's argument that an award of attorney fees was barred by section 1717(b)(2) because (counsel asserted) (1) German American had voluntarily dismissed its complaint before there was an adjudication on the merits, and (2) under *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, a ruling on a motion for

15

preliminary injunction is not an adjudication of the ultimate rights in controversy. The court found that German American "failed to achieve its main litigation objective (appointment of a receiver), and defendants achieved theirs (avoidance of the costs and delays associated with a receivership)." The court stated that the goal of the litigation was the imposition of a receivership, "[t]his was denied twice", and "[t]he fact that the complaint was in the form of a judicial foreclosure action does not change the analysis, because this would [impermissibly] respect form over substance." The court again found that Pacific Highway and Berkson Realty were the prevailing parties because they "achieved dismissal of the action with no receivership being imposed."

B. *Applicable Legal Principles*

1. *Section 1717*

Section 1717(a) provides in part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party *prevailing on the contract*, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Italics added.)

Thus, section 1717(a) "permits an award of attorney's fees to the party prevailing 'on the contract' where the contract provides for attorney's fees incurred to enforce it." (*Chase Manhattan Mortgage Corp. v. Lessell*, *supra*, 55 Cal.App.4th at p. 13.)

"The primary purpose of section 1717 is to ensure mutuality of remedy for attorney fee claims under contractual attorney fee provisions." (*Santisas*, *supra*, 17

16

Cal.4th at p. 610.)  "Thus, the party prevailing on a contract claim is generally entitled to attorney fees under section 1717 whenever that party would have been liable for attorney fees under the contract had the other party prevailed."  (*CDF Firefighters v. Maldonado* (2011) 200 Cal.App.4th 158, 164 (*CDF Firefighters*).)

a.  *Section 1717(b)(2)*

However, section 1717(b)(2) "sets forth an exception to the general entitlement to contractual attorney fees."  (*CDF Firefighters*, *supra*, 200 Cal.App.4th at p. 164.) Section 1717(b)(2) provides:

> "(b) . . . The court may . . . determine that there is no party prevailing on the contract for purposes of this section.  [¶] (2) Where an action has been *voluntarily dismissed* or dismissed pursuant to a settlement of the case, there shall be *no prevailing party* for purposes of this section."  (Italics added.)

Thus, under the exception set forth in section 1717(b)(2), a defendant in a contract-based action generally "is not deemed a prevailing party where the plaintiff voluntarily dismisses the action."  (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1209 (*Mitchell*).)  The California Supreme Court has explained that, "[w]hen a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract and based on a contract containing an attorney fee provision), and the plaintiff thereafter voluntarily dismisses the action, section 1717[(b)(2)] bars the defendant from recovering attorney fees incurred in defending those causes of action, even though the contract on its own terms authorizes recovery of those fees."  (*Santisas*, *supra*, 17 Cal.4th at p. 617, italics omitted.)

17

"The policy behind [section 1717(b)(2)] is to encourage settlements and to discourage the maintenance of pointless litigation." (*CDF Firefighters*, *supra*, 200 Cal.App.4th at p. 164, citing *Santisas*, *supra*, 17 Cal.4th at p. 613 ["permitting recovery of attorney fees by defendant in all cases of voluntary dismissal before trial would encourage plaintiffs to maintain pointless litigation in moot cases or against insolvent defendants to avoid liability for those fees"].)

2. *Limitations on a plaintiff's right to voluntarily dismiss an action*

However, "[t]he right of a plaintiff to voluntarily dismiss an action before commencement of trial is not absolute. Code of Civil Procedure section 581 recognizes exceptions to the right; other limitations have evolved through the courts' construction of the term 'commencement of trial.' These exceptions generally arise where the action has proceeded to a *determinative adjudication*, or to a *decision that is tantamount to an adjudication*." (*Harris v. Billings* (1993) 16 Cal.App.4th 1396, 1402, italics added; accord, *Mitchell*, *supra*, 204 Cal.App.4th at p. 1209.)

C. *Analysis*

German American argues the court erred as a matter of law in granting Pacific Highway and Berkson Realty's motion for attorney fees because section 1717(b)(2) bars a prevailing-party fee award where, as here, the action was voluntarily dismissed prior to an adjudication on the merits of the contract-based claims asserted in the complaint.

In response, Pacific Highway and Berkson Realty assert German American "could not 'voluntarily' dismiss the complaint without prejudice and invoke the protections of [section 1717(b)(2)]" because (1) this action was a "cause of action for specific

18

performance for [appointment of] a receiver"; (2) German American "*demanded* [that] the court *formally adjudicate* its action for specific performance for appointment of a receiver" (italics added); and (3) under Code of Civil Procedure section 581, German American could not voluntarily dismiss its complaint without prejudice in order to avoid paying attorney fees under section 1717 because it filed the dismissal *after* the court denied its ex parte requests for appointment of a receiver and thereby "adjudicated the facts and legal issues alleged in the complaint."

Thus, the principal question we must decide is whether the attorney fees award in favor of Pacific Highway and Berkson Realty was barred under the provisions of section 1717(b)(2). Our decision requires a determination of whether German American filed the dismissal of its complaint prior to a determinative adjudication, or to a decision that is tantamount to an adjudication, on the merits of the contract-based causes of action asserted in its complaint. (See *Harris v. Billings*, *supra*, 16 Cal.App.4th at p. 1402; *Mitchell*, *supra*, 204 Cal.App.4th at p. 1209.) If German American voluntarily dismissed the action prior to such an adjudication, the attorney fees award was barred by section 1717(b)(2).

Contrary to Pacific Highway and Berkson Realty's assertion, this action was not a "cause of action for specific performance for [appointment of] a receiver." In *Crowley v. Katleman* (1994) 8 Cal.4th 666 (*Crowley*), the California Supreme Court explained that "[t]he primary right theory is a theory of code pleading that has long been followed in California. It provides that a 'cause of action' is comprised of a 'primary right' of the plaintiff, a corresponding 'primary duty' of the defendant, and a wrongful act by the

19

defendant constituting a breach of that duty. [Citation.] The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action." (*Id.* at p. 681.) "[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered." (*Ibid.*)

*Crowley* also explained that the primary right "must therefore be distinguished from the *legal theory* on which liability for that injury is premised: 'Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief.' [Citation.] The primary right must also be distinguished from the *remedy* sought: 'The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and *the relief is not to be confounded with the cause of action*, one not being determinative of the other.' " (*Crowley*, *supra*, 8 Cal.4th at pp. 681-682, last italics added.)

Thus, in *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, this court explained that "a single cause of action is based on the harm suffered, rather than on the particular *legal theory asserted or relief sought* by the plaintiff." (*Id.* at p. 991, italics added.)

Here, German American's complaint asserted four "causes of action" titled "Specific Performance for Appointment of Receiver, "Judicial Foreclosure of First Deed of Trust, " "Judicial Foreclosure of Second Deed of Trust," and "Breach of Written Guaranties." However, application of the primary right theory of code pleading compels the conclusion that German American's action was *not* a "cause of action for specific performance for [appointment of] a receiver," as Pacific Highway and Berkson Realty

20

contend and as the court found.[4]  Rather, as discussed more fully in the procedural background, *ante*, it was an action for various alleged breaches of the loan documents. As German American correctly points out, the California Supreme Court long ago explained that "[t]he appointment of a Receiver is a mere ancillary remedy.  *It is never the main object of the suit*.  Sec[tion] 564 of the California Code of Civil Procedure[5] merely gives a provisional remedy.  It creates no new right of action." (*French Bank Case* (1879) 53 Cal. 495, 519-520, italics added.)  The Supreme Court further explained that "[t]here is, of course, no such thing as an action brought distinctively for the mere appointment of a Receiver—such an appointment, when made, is ancillary to or in aid of the action brought.  Its purpose is to preserve the property *pending the litigation* so that the relief awarded by the judgment, if any, may be effective." (*Id.* at p. 553, italics added.)  Witkin explains that "a receivership is only a *provisional remedy* in an action that seeks some other relief by final judgment.  *There is no substantive right to a receiver and no action for a receiver*." (6 Witkin, Cal. Procedure, *supra*, Provisional Remedies, § 419, p. 358, italics added.)  In other words, appointment of a receiver is only an ancillary or provisional remedy, not a cause of action, that a plaintiff may seek in an appropriate case *pending the outcome of the litigation* on the cause of action alleged in the plaintiff's complaint. (*French Bank Case*, *supra*, 53 Cal. at pp. 519-520, 553; 6

---

4      At the hearing on the attorney fees motion, the court specifically found that "the gravamen of this case was a receivership."

5      "[Code of Civil Procedure] section 564 governs the appointment of receivers in all cases."  (6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, § 419, p. 358.)

21

Witkin, Cal. Procedure, *supra*, § 419, p. 358.) Here, in contravention of the Supreme Court's admonition in *Crowley* that the relief a plaintiff seeks in its complaint is not to be confused with the causes of action alleged therein, Pacific Highway and Berkson Realty have confused one of the provisional forms of relief that German American requested—appointment of a receiver—with the causes of action alleged in the complaint. (See *Crowley*, *supra*, 8 Cal.4th at p. 682.)

Having rejected Pacific Highway and Berkson Realty's claim that German American's action against them was action was a "cause of action for specific performance for [appointment of] a receiver," we next must decide whether German American filed the dismissal of its complaint *prior* to a determinative adjudication, or to a decision that is tantamount to an adjudication, on the merits of its contract-based action such that an award of attorney fees in favor of Pacific Highway and Berkson Realty was barred under section 1717(b)(2).

As a preliminary matter, we conclude Pacific Highway and Berkson Realty's assertion that, "[a]t a second ex parte hearing, German American demanded [that] the court formally adjudicate its action for specific performance for appointment of a receiver," is unavailing. We have already concluded that German American's action was *not* an action for specific performance for appointment of a receiver. Furthermore, Pacific Highway and Berkson Realty have failed to provide a citation to anything in the record that would show German American "demanded" at the second hearing—which was held on October 28, 2011—that the court "formally adjudicate" the various breach of

contract allegations asserted in its complaint.[6]  They merely quote an excerpt in a supplemental brief that German American filed for the court's consideration at that second hearing, which stated:  "A receiver is entirely warranted here in order to take hold of the funds and apply them to the repairs or to the loan as provided for in the loan documents."[7]  This excerpt is *not* a demand by German American that the court "formally adjudicate" the various breach of contract allegations asserted in its complaint; it is merely an argument in favor of German American's pretrial request for the appointment of a receiver, a provisional or ancillary remedy, pending the outcome of the litigation.  After reviewing the record, we conclude nothing therein indicates that German American demanded any such determinative adjudication.

For several other reasons, we conclude German American properly dismissed its complaint *prior* to a determinative adjudication, or to a decision that is tantamount to an adjudication, on the merits of its contract-based action.  The dismissal requested by German American was entered on October 10, 2012, two days before the court was scheduled to conduct the case management conference, which it had continued from July

---

6      Under rule 8.204(a)(1)(C) of the California Rules of Court, Pacific Highway and Berkson Realty were required to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  "[I]t is [a litigant's] duty to point out portions of the record that support the position taken on appeal.  The appellate court is not required to search the record on its own seeking error." (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768.)

7      German American's supplemental brief was titled "Plaintiff's Supplemental Brief in Support of Application for Appointment of Receiver for Property Located at 1495 Pacific Highway, San Diego, California 92101, and for a Preliminary Injunction in Aid of Receiver."

23

of that year. As German American correctly asserts, "[t]here was no trial setting, there was no stipulation to try the case by declarations, there was no jury waiver, and there were no procedural or due process safeguards rising to the level of a 'trial' on the merits." Nothing in the moving papers German American filed in support of its requests for appointment of a receiver and provisional injunctive relief even remotely suggested that German American was seeking an adjudication that would be tantamount to summary judgment.

In addition, Pacific Highway and Berkson Realty's own conduct demonstrated there was no determinative adjudication on the merits of the action before German American's dismissal without prejudice was entered on October 10, 2012. The record shows the court denied German American's application for appointment of a receiver and issuance of a preliminary injunction on October 28, 2011. About a month later, Pacific Highway and Berkson Realty jointly responded to German American's verified complaint by filing their verified answer. Thereafter, in March 2012, Pacific Highway and Berkson Realty jointly filed their case management statement in which they asserted that "[t]his case will be ready for trial within 12 months of the date of the filing of the complaint," and they would complete discovery ("[d]epositions, written discovery") by August 2012.

The foregoing conduct was an implied acknowledgment by Pacific Highway and Berkson Realty that the court's denial of German American's request for appointment of a receiver was not a determinative adjudication of the merits of the causes of action alleged in the complaint. Witkin explains that "[t]he answer is a pleading by the defendant in response to the complaint. It raises issues of fact. Under [Code of Civil Procedure

24

section] 590, *an issue of fact arises*: (1) '*Upon a material allegation in the complaint controverted by the answer*'; and (2) Upon new matters in the answer, except an issue of law is joined thereon." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1045, p. 488, italics added.) Thus, a material factual allegation set forth in a complaint generally cannot be determinatively adjudicated on the merits until the defendant files an answer to the complaint controverting that allegation, thereby giving rise to an issue of fact that may be adjudicated by the trier of fact. (*Ibid*.; Code Civ. Proc., § 590.)

Here, as noted, Pacific Highway and Berkson Realty filed their verified answer *after* the court denied German American's application for appointment of a receiver and issuance of a preliminary injunction. The answer denied material factual allegations set forth in the complaint, including those set forth in the first "cause of action" for "Specific Performance for Appointment of Receiver." Thus, the court's denial of German American's request for appointment of a receiver was not a determinative adjudication of the factual allegations set forth in German American's complaint because Pacific Highway and Berkson Realty had not yet controverted those allegations by filing an answer to the complaint. (Code Civ. Proc., § 590; 5 Witkin, Cal. Procedure, *supra*, § 1045, p. 488.)

For all of the foregoing reasons, we conclude section 1717(b)(2) barred the attorney fees award in favor of Pacific Highway and Berkson Realty because the court's denial of German American's pretrial requests for the ancillary remedy of an appointment of a receiver did *not* constitute a determinative adjudication on the merits of the contract-based causes of action alleged in German American's complaint; and, thus, German

25

American voluntarily dismissed this contract-based action *prior* to a determinative adjudication, or to a decision that is tantamount to an adjudication, on the merits of those causes of action, thereby precluding an award of prevailing-party contractual attorney fees under section 1717 in favor of Pacific Highway and Berkson Realty.[8]

DISPOSITION

The order awarding attorney fees in favor of Pacific Highway and Berkson Realty is reversed.  German American shall recover its costs on appeal.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.

---

[8]     In light of our conclusion, we need not, and do not, address the merits of German American's contention that the trial court abused its discretion in determining that Pacific Highway and Berkson Realty were the prevailing parties.